THE MAYOR AND BOARD OF ALDERMEN OF THE CITY OF PONTOTOC, MISS., et al. *v.* WHITE, et al.

No. 40441          March 25, 1957          93 So. 2d 852

*J. D. Doty,* Pontotoc; *Fant & Bush,* Holly Springs, for appellant.

*Adams, Long & Adams,* Tupelo; *Byrd P. Mauldin,* Pontotoc, for appellees.

LEE, J.

The Mayor and Board of Aldermen of the City of Pontotoc, on March 7, 1950, acting under Section 3590, et seq., Code of 1942, adopted a zoning ordinance.

On September 7, 1954, O. A. Cannon sought from the Mayor and Board of Aldermen a permit to add to his storehouse, located at the intersection of Calhoun and Brooks Streets in the city and in District No. 1 therein. His request was accompanied by a plat, which showed that the existing building was 18 by 14 feet with a 10 by 14 foot open shed on the north. It was proposed to add a storage room 14 by 22 feet on the east side thereof, and enclose an 8 by 14 foot strip of the open shed. The material for the construction was to be of wood siding and approved roofing. The storehouse is in a residential

area, but it had been in use as a storehouse before the adoption of the ordinance. On the same date, the Mayor and Board of Aldermen, at a regular meeting, by a resolution, adjudged that the proposed addition "does not violate any of the provisions of * * * the 'zoning ordinance' of said city", and ordered the clerk to issue the permit.

On September 13, 1954, V. V. White and others, claiming to be resident citizens and property owners of the area, petitioned the Board to rescind its order of September 7, 1954, wherein the permit was granted to Cannon. It was charged that the building inspector did not pass on the plans and specifications, and did not grant a permit to alter or change the same; that the plans were a mere rough sketch, and the dimensions of the lot were not given; that the objectors had no notice of the proposal; and that several sections of the zoning ordinance were violated in the grant.

Thereafter at the regular meeting on October 5, 1954, the Mayor and Board refused to rescind its action in granting the permit. Although the objectors had the right, under the ordinance, to appeal to the circuit court in accordance with Section 1195, Code of 1942, they did not do so. However subsequently, within the time provided by law, they applied for a writ of certiorari. The writ was granted, and the record, consisting of certified copies of the ordinance, the plat under which the permit was sought, the order of the Mayor and Board of Aldermen thereon, the petition to rescind, and the order of the Board refusing to rescind, were filed in obedience to the writ.

At the hearing, the court, over the objection of appellants, permitted the objectors to offer evidence, in effect showing that Cannon, according to his preliminary construction, was making structural changes which would enable him to tear out two of the original walls, and have

all of his floor space in one big room, thereby greatly enlarging the original building.

At the conclusion of the trial, the court entered a judgment which recited that it had considered the ordinance, the application and drawings for the repairs, and the testimony had on the trial, and that the court was of the opinion and held that the proposed additions were violative of both the letter and spirit of the zoning ordinance. The judgment further stated: "That on its face, the alterations, additions and enlargements violate the terms of the ordinance. That the same constitutes an alteration of an existing non-conforming building and an enlargement of the same against the spirit and letter of the ordinance. It then set aside the order of the Mayor and Board of Aldermen, granting the permit, and entered the order which, the court held, should have been entered.

From the judgment entered, the City and Cannon appeal.

██ ██ The appellants contend that the court, in the hearing upon certiorari, was limited to the record as certified; that, upon this record, the Mayor and Board of Aldermen were empowered to grant the writ; and that the appellees had no interest in the matter.

Sections 1206-7, Code of 1942, plainly provide that, on removal of a cause by certiorari from a justice of the peace court or other inferior tribunal, the circuit court "shall be confined to the examination of questions of law arising or appearing on the face of the record and proceedings". These statutes have been construed many times by this Court to exclude, as a general rule, the taking of evidence. See Board of Supervisors of Forrest County v. Melton, et al, 123 Miss. 615, 86 So. 369; Federal Credit Co. v. Zepernick Grocery Co., 153 Miss. 489, 120 So. 173; Mills v. Churchwell Motor Co., 154 Miss. 631, 122 So. 773; Yazoo & M. V. R. Co. v. Miss. Railroad

Commission, 169 Miss. 131, 152 So. 649; Hamilton v. Long, 181 Miss. 627, 180 So. 615.

Yazoo & M. V. R. Co. v. Miss. Railroad Commission, supra, construed Robinson v. Mhoon, 68 Miss. 712, 9 So. 887, as an instance where the writ of certiorari was used for the purpose of obtaining the record in the case then on appeal; and, in commenting on Gulf & S. I. R. Co. v. Adams, 85 Miss. 772, 38 So. 349, said that: "It did not hold that the court could look to the evidence on which the Commission acted; in fact, none such was before the court."

In Federal Credit Co. v. Zepernick Grocery Co., supra, it was said: "It is also the general rule that, under a writ of certiorari, the evidence on which the inferior court based its determination forms no part of the record, and should not be returned, unless required by statute or shall become essential by some extraordinary circumstances; as for instance, where the inferior tribunal acts beyond or in disregard of its lawful jurisdiction." The exception to the general rule, as above stated, was evidently what the court had in mind in Caruthers v. Panola County, 205 Miss. 403, 38 So. 2d 902. In that case, unless the board of supervisors had authority to hold its meetings at Batesville in the Second District of the county on the second Monday in each month, its orders, adopted at that time and place in November, December and February, would have been void. The opinion held that the minutes of the board were presumed to be in accordance with law, and that the burden was on the challenger to show that the meeting was illegal. The appellant there made no showing whatever to meet this burden. On the contrary, certified copies of orders of the board, adopted in 1914 and 1936, pursuant to law, and authorizing meetings at Batesville on the second Monday in each month were included in the record which was brought up by certiorari, and these orders showed that the meetings at Batesville were legal.

The Mayor and Board of Aldermen here obviously had jurisdiction of the subject matter. They were the governing authority to grant or deny permits under the zoning ordinance. Hence there was no occasion whatever to take testimony in the hearing on certiorari, and manifestly the court was in error in doing so.

But the court also held that the proposed alterations, on their face, were violative of the zoning ordinance. ██ ██ Under Section 7 of the ordinance, provision is made for the continued use of property as it was being used at the time of the adoption of the ordinance, "and such use may be extended throughout the building, *provided no structural alterations except those required by law or ordinance, are made therein. If no structural alterations are made,* a non-conforming use of the building may be to any use permitted in the same use district as that in which the use existing at the time of the adoption of this ordinance is permitted, according to the provisions of this ordinance." (Emphasis supplied). Under Section 17 of definitions therein, as to structural alterations, it is provided as follows: "Any change in supporting members of a building, such as bearing walls, columns, beams or girders." From a study of Section 10 of the ordinance, with reference to variations, it does not appear that the Mayor and Board of Aldermen were warranted in designating these proposed changes in the storehouse as a mere variation.

The Law of Zoning and Planning, by Rathkopf, is a recent and exhaustive work on this subject. At page 56 thereof the author cites cases which hold that exemptions in ordinances favorable to the owner should be liberally construed. But the board may not magnify its powers in such manner as to repeal zoning ordinances by action taken under the guise of a variance. Ibid. p. 604. A variance or exception, when granted, must be in harmony with the spirit, intent and purpose of the

ordinance. Ibid. p. 670-1. Cases are cited from eleven states.

Perhaps it would have been an act of wisdom on the part of the governing authorities, at the time of the adoption of the zoning ordinance, to have made provision for an increase in floor space of this kind of building, as the increase in business justified. But there is no such provision in the ordinance. The floor space of the storehouse is 252 sq. feet. The area of the proposed storeroom is 308 sq. feet, and that of the proposed shed to be enclosed amounts to 112 sq. feet. In other words, the two additions aggregate 420 sq. feet—approximately 1.7 times as large as the present building. Manifestly, the erection of such additions would be violative of the provisions of the ordinance.

In the case of Jones v. City of Hatticsburg, 207 Miss. 491, 42 So. 2d 717, relied on by the appellants, it appeared that the railroad company had been using its right of way for commercial purposes, running trains thereover for 50 years, when the zoning ordinance was adopted. Such use could continue under the ordinance. The opinion pointed out that construction and maintenance of the warehouse on the right of way for the reception of freight moving over the railroad, as proposed by the appellants there, lessees of the railroad company, was a reasonable use and no more objectionable than the operations prior to the adoption of the ordinance. Consequently the action of the city authorities in denying the right to construct the warehouse was denominated an unreasonable and arbitrary interpretation of the ordinance. The facts in that case are quite different from the facts in the present case. Besides, the railroad company had been using all of its property for commercial purposes. Cannon's storehouse was only 18 by 14 feet. Even though, for instance, he might stack cases of empty bottles on the outside, or permit patrons to park their cars on the balance of his lot, or make other similar use there-

of, still such use would not justify the enlargement of his building. If so, then it would be proper, if his lot was in fact 200 feet square, to permit him to enlarge this small building so that it would cover the entire lot. Such a construction would, in many instances, nullify the benefits of zoning ordinances.

Rathkopf's work, supra, shows the rule to be that any property owner or person having an interest in property which is or may be affected by a permit or variance illegally issued or denied is an aggrieved party, and may apply to the court for relief. Ibid. p. 622. The author cites many cases to sustain this principle. Consequently it is clear that the objectors were proper parties to the proceeding.

While the court erred in hearing oral testimony, the record from the Mayor and Board of Aldermen of the City showed that, on its face, the granting of the permit was violative of the zoning ordinance. Hence the court reached the right result in declaring the permit void and in ordering its denial. Consequently the case must be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Holmes* and *Ethridge,* JJ., concur.