113 So.2d 849 (1959)
Helen M. ELWYN, a single woman, and Nelly Wilson, a widow, Appellants,
v.
CITY OF MIAMI, a municipal corporation of the State of Florida, Elgene, Inc., a Florida corporation, and Mary Loi, a single woman, Appellees.
No. 58-653.
District Court of Appeal of Florida. Third District.
June 2, 1959.
Rehearing Denied July 2, 1959.
*850 Franklin Parson, Miami, Robert D. Zahner and Alice Wainwright, Coconut Grove, for appellants.
Dubbin, Blatt & Schiff, William L. Pallot, City Attorney, and Edward Fitzpatrick, Asst. City Atty., Miami, for appellees.
CARROLL, CHAS., Chief Judge.
Appellants, plaintiffs below, appeal from an order of the circuit court dismissing their complaint by which they sought a decree to invalidate an ordinance allowing a zoning variance. The question for our determination is whether the complaint stated a cause of action.
The complaint, summarized, showed the following:
The City Commission of the City of Miami granted a variance permit, on the application of the appellee Elgene, Inc., for the construction and operation of a gasoline service station on certain property in the City of Miami, fronting on South Dixie Highway (U.S. No. 1) at the intersection of Southwest 30th Court. The property involved consisted of Lots 13, 14 and 15 of Block 2, Highway Park Sub., according to a plat thereof recorded in Plat Book 40, Page 29, of the Public Records of Dade County. For some years the property along the highway in that area had been zoned R2 (duplex). While it was so zoned, Mary Loi acquired the subject parcel. On May 15, 1957, property in that area for a number of blocks fronting on the highway was rezoned to the more liberal classification of R3, which was alleged to include the uses of "apartment, hotel, motel, private club, community garage, parking lot, public art gallery, public museum."
*851 Some nine months later, and while the subject parcel was owned by Mary Loi, an application was made by the appellee Elgene, Inc., for a "hardship" variance to allow the construction and operation of a gasoline service station on the property, being a use not authorized by the R3 zoning. The hardship claimed by the applicant was that the character of the neighborhood had changed; that two of the lots were not directly accessible to the highway; and that the property was no longer usable for residential purposes.
Appellants, who were owners and residents of adjoining properties, and numerous other owners of properties nearby, filed objections. The City Planning & Zoning Board heard and denied the Elgene, Inc., application for a hardship variance.
After its application had been denied, Elgene, Inc. purchased the property and took a conveyance from Mary Loi. Then Elgene, Inc. appealed the zoning board's ruling to the city commission.
Under § 72(t) of the charter of the city (Chapter 10847, Laws of Florida, Special Acts of 1925, as amended), variance permits were authorized and restricted as follows:
"A variance of the restrictions, regulations and boundaries established by the zoning ordinance may be granted under the same terms and conditions as an addition to, amendment, supplement, change, modification, or repeal of the Zoning Ordinance. No variance permit shall be issued, however, except in instances where practical difficulties and unnecessary hardship shall be incurred by the applicant if said permit were refused."
The city commission reversed the action of the zoning board, and granted the variance to authorize use of the property as a gasoline service station, by enacting ordinance No. 6174, dated April 16, 1958. The reason given in the ordinance for granting the variance was: "Because it has been shown that the restrictions of the above described property under an R3 use will cause undue and unnecessary hardship."
The appellants in their complaint contended that the ordinance was invalid because (1) any hardship which the applicant Elgene, Inc. might claim was self-imposed, (2) there was no hardship basis to justify a variance, (3) the result was "spot zoning" which denied to plaintiffs equal protection of the laws, and (4) the variance would result in injury and depreciation in value of plaintiffs' adjoining properties, and destroy the use and enjoyment thereof.
Plaintiffs as abutting home owners were entitled to maintain the suit challenging the propriety, authority for and validity of the ordinance granting the variance. Wags Transportation System, Inc. v. City of Miami Beach, Fla. 1956, 88 So.2d 751; Hartnett v. Austin, Fla. 1956, 93 So.2d 86. See generally Foss, Interested Third Parties in Zoning, 12 U.Fla.L.Rev. 16 (1959).
But "unnecessary hardship" as used in the city charter, and as contemplated in this sense, has been given a special and limited meaning. The authorities seem uniform on the proposition that the difficulties or hardships relied on must be unique to the parcel involved in the application for the variance. They must be peculiar to that particular property, and not general in character, since difficulties or hardships shared with others in the area go to the reasonableness of the zoning generally, and will not support a variance. If the hardship is one which is common to the area the remedy is to seek a change of the zoning for the neighborhood rather than to seek a change through a variance for an individual owner. Thus some exceptional and undue hardship to the individual land owner, unique to that parcel of property and not shared by property owners in the area, is an essential prerequisite to the granting of such a variance. 58 Am.Jur., Zoning, §§ 203-204; 101 C.J.S. Zoning §§ 290-294; 8 McQuillin, Municipal Corporations, §§ 25.166-25.169 (3d ed. rev. 1957); 1 *852 Yokley, Zoning Law and Practice, §§ 138-139 (2d ed. 1953).
A variance should not be granted where the use to be authorized thereby will alter the essential character of the locality, or interfere with the zoning plan for the area and with rights of owners of other property; and a variance which permits a use not authorized by an existing zoning classification fixed under a planned zoning of the area or neighborhood, generally is not justified unless the land can not yield a reasonable return when used only for purposes authorized in its present zoning. From the complaint it appears that the variance was sought for the economic advantage of the applicant, and not because the property was not reasonably and profitably usable for one or another of the purposes for which it was zoned.
The complaint in this case adequately raised the question of the existence vel non of any exceptional and undue hardship pertaining to the particular property involved, so as to justify or permit the ordinance for the variance, and therefore was sufficient to withstand the challenge of a motion to dismiss.
Moreover, the complaint showed that the hardship claimed was self-created and self-imposed. One who purchases property while it is in a certain known zoning classification, ordinarily will not be heard to claim as a hardship a factor or factors which existed at the time he acquired the property. That point is stronger in this case because here the purchaser of the property, aware of the permitted uses, sought to obtain a variance therefrom before it acquired the property, and the appellee corporation took conveyance of the property after the city zoning board had ruled against its application for a variance. A self-imposed or self-acquired hardship (such as by purchasing property under existing zoning and then applying for a variance) is not the kind of hardship for which variance should be granted. See Kazlow v. Peters, Fla. 1951, 53 So.2d 321; Josephson v. Autrey, Fla. 1957, 96 So.2d 784; Green v. City of Miami, Fla.App. 1958, 107 So.2d 390; City of Miami Beach v. Greater Miami Hebrew Academy, Fla. App. 1958, 108 So.2d 50.
In Josephson v. Autrey, supra [96 So.2d 784], the Supreme Court dealt with the question of "the effect of a zoning restriction existing when property is acquired on the claim of the property owner that a hardship exists by virtue of such zoning restriction." With reference thereto the Supreme Court there said (96 So.2d at pages 789-790):
"* * * In the instant case the appellees Cunningham acquired the land with full knowledge of the existing zoning restrictions. As a matter of fact, they paid to the seller a substantial profit over and above the amount paid for the land by the seller a short time before. They purchased the property burdened with the provision of the zoning ordinance that restricted its use to tourist accommodations and similar uses. They then appeared before the appeals board and contended `hardship' solely on the basis that the land was not worth what they paid for it burdened by the use restriction which they knew to be in existence when they bought the property
"The authorities are generally in accord on the proposition that in seeking a variance on the ground of a unique or unnecessary hardship, a property owner cannot assert the benefit of a `self-created' hardship. Appellee cites our cases where we have held that a property owner will not be precluded from attacking the basic validity of a zoning ordinance merely because the ordinance was in force when he acquired the property. The situation is entirely different. The invalid ordinance can have no effect whatsoever and its invalidity can be assaulted at any time. The application for a variance permit recognizes the basic validity of the ordinance and seeks the grant of a variance purely on the basis of some hardship peculiar to his particular property. *853 When the owner himself by his own conduct creates the exact hardship which he alleges to exist, he certainly should not be permitted to take advantage of it. On the proposition of the effect of self-created hardships see the following: Garlick v. City of Miami, Fla. 1953, 67 So.2d 440; Miami Beach United Lutheran Church of the Epiphany v. City of Miami Beach, Fla. 1955, 82 So.2d 880; Mayer v. Dade County, Fla. 1955, 82 So.2d 513; Freitag v. Marsh, 280 App.Div. 934, 115 N.Y.S.2d 838; Stevens v. Connor, Sup., 120 N.Y.S.2d 345; Deer-Glen Estates v. Board of Adjustment and Appeal, 39 N.J. Super. 380, 121 A.2d 26; Keller v. Town of Westfield, 39 N.J. Super. 430, 121 A.2d 419; Gleason v. Keswick Improvement Ass'n, Inc., 197 Md. 46, 78 A.2d 164; Caccia v. Zoning Board of Review, [1955, 83 R.I. 146, 113] A.2d 870; Newcomb v. Teske, 225 Minn. 223, 30 N.W.2d 354; Rathkopf, Law of Zoning and Planning (3d Ed.), p. 748; 8 McQuillin, Municipal Corporations (3d Ed.), Sec. 25.168, p. 296. Also see City of Miami Beach v. Hogan, Fla. 1953, 63 So.2d 493."
The showing in the complaint was sufficient to state a cause of action to invalidate the challenged variance ordinance. The dismissal order appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.
Reversed.
HORTON and PEARSON, JJ., concur.

On Petition for Rehearing
PER CURIAM.
In their petition for rehearing appellees Elgene, Inc. and Loi set forth a number of grounds including the suggestion that in holding the adjoining property holders were entitled to bring the suit this court overlooked the case of Boucher v. Novotny, Fla. 1958, 102 So.2d 132, 135. That case was not applicable here because of material difference in the factual situations presented in the two cases.
The Novotny case dealt with a violation of a municipal zoning ordinance. The suit there was one by a nearby home owner to enjoin a motel owner from extending portions of his structure beyond the pre scribed setback lines, although the city had approved his building plans which called for such violation. In that case the Supreme Court noted that the only damage claimed by the plaintiff was one which, as he alleged it, was suffered by the whole community as a result of the setback violation. The court in that case announced the rule that an individual proceeding against an alleged "violation of a municipal zoning ordinance" must show "special damages peculiar to himself differing in kind as distinguished from damages differing in degree suffered by the community as a whole.[1]"
The instant case was not one dealing with the violation of a zoning ordinance, but one which challenged the validity of an amendatory zoning ordinance, which, by granting a variance amounting to spot zoning, permitted appellees to put their property to a liberal business use (gasoline service station), prohibited in the more restricted R-3 classification for which the area involved was zoned. The right of an adjacent or nearby home owner directly affected by an alleged improper intrusion of such liberal business to challenge the validity thereof, is recognized.[2]
*854 Here the plaintiffs alleged that loss of value and destruction of use of their property would result from the noise, traffic, and unsightliness which the service station would bring about. It should be noted that the claim of loss in the present case is direct, and the reasons for it are alleged, that is, noise, traffic and unsightliness of the service station, whereas in the Novotny case the allegation of loss was that of the community as a whole and not that of the individual plaintiff.
Under the rule referred to in the Novotny case, as to the need to allege special injury to the plaintiff rather than general injury to the community as a whole, it seems clear that in addition to general community injury, the plaintiffs in the instant case alleged and may show the requisite injury special or peculiar to them as residents adjacent and nearby to the proposed gasoline service station. The noises from the traffic and from the operation of service stations such as from lubrication machines, pumping machinery, the use of and dropping of tools, and the unsightly factors alleged which would include the lights and glare from the place, could have a very serious effect on the value and use value of nearby residences, whereas other residents of the "community as a whole" would not be affected by those direct injuries. The noises, smells and lighting glare which might be an extreme injurious factor to one who lived next door to the service station could not be heard, smelled or seen by those members of the "community as a whole" who lived some distance away. Thus, injuries to the adjacent or nearby owners were special to them and different from and in addition to the injury which resulted to the entire area or community as a whole from the fact of down-grading of the zoning.
In the case presented, alleging special and direct injury, a denial of a right to sue would be counter to the command of Section 4 of the Declaration of Rights of the Florida Constitution, 25 F.S.A., which reads:
"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."
Having considered the several grounds presented in the petition for rehearing, and finding them to be without merit, we adhere to our opinion and judgment herein dated June 2, 1959, and the petition for rehearing is denied.
HORTON, C.J., PEARSON and CARROLL, CHAS., JJ., concur.
NOTES
[1] But see Fortunato v. City of Coral Gables, Fla. 1950, 47 So.2d 321; and Conrad v. Jackson, Fla. 1958, 107 So.2d 369, where individual were allowed to attack violations of zoning ordinances where they alleged individual rather than community injuries.
[2] Wags Transportation System, Inc. v. City of Miami Beach, Fla. 1956, 88 So.2d 751; Hartnett v. Austin, Fla. 1956, 93 So.2d 86; Josephson v. Autrey, Fla. 1957, 96 So.2d 784. See, also, Mayor and Board of Aldermen, etc. v. White, 1957, 230 Miss. 698, 93 So.2d 852; and Annotation, 37 A.L.R.2d 1143.