PEARSON, Judge.
This appeal questions the yalidity of a zoning variance which was granted to a lessee of premises located less than 500 feet from another liquor establishment. The lessee (J & R Restaurant Corp.) had entered into an agreement to rent space, in a new building if it could secure a designated type of liquor license and secure a zoning variance. Thereafter, the lessee entered into an agreement to purchase the liquor license of a person whose property had been taken by eminent domain. The later agreement was also conditioned upon the lessee obtaining a variance.[1] The City Commission adopted a resolution which granted the variance.[2] The owners of the establishment which was located within 500 feet of the lessee brought suit in the circuit court to nullify the resolution. The circuit court found that the lessee had no hardship, but did not declare the resolution invalid because it felt that to do so would deprive the person who sold the license of his right to sell a valuable property. The final decree states:
“From the testimony adduced before me the Court is satisfied that the defendant, J & R RESTAURANT CORP., a Florida corporation, in and of itself does not satisfy the requirements of the Charter of the City of Miami as to hardship. However, it is the Court’s opinion that the hardship of the original licensee, Victor Scarpelli, is sufficient to justify the action taken by the Commission of the City of Miami.
*234 “It is further the Court’s opinion that in cases of this type the chancellor is not to second guess the legislative body of the municipality, but is only to determine whether facts exist upon which a legislative decision, agreeing with the chancellor’s view or not, could have been made. Since the licensee, Scarpelli, presented a bona fide hardship (taking of his property by eminent domain) a denial to him of the right to contract for the sale of his license would, in the Court’s opinion, compound the hardship.
“ * * * To deprive the licensee in this case of the opportunity to contract for the sale of his license, contingent on the procuring of a variance would, in the Court’s opinion, be pushing a man who was already about to fall.”
The main thrust of appellant’s attack upon the final decree is presented by its first point as follows: “Is the transferee of a liquor license entitled to a zoning variance by reason of the hardship of his trans-feror?”
An “exceptional and unique hardship to the individual landowner, unique to that parcel of property and not shared by property owners in the area, is an essential prerequisite to the granting of a ‘hardship’ zoning variance.” City of Miami v. Franklin Leslie, Inc., Fla.App.1965, 179 So.2d 622, 624. See also Elwyn v. City of Miami, Fla. App.1959, 113 So.2d 849. We have held a variance from a zoning ordinance on the ground of hardship to be invalid where the hardship was self-created because the owner knew of the restricted zoning ordinance prior to the acquisition of a beverage license. See Green v. City of Miami, Fla. App.1958, 107 So.2d 390.
The chancellor’s determination that J & R Restaurant Corp. did not show a hardship is supported by the record;[3] therefore, the variance is invalid. See City *235 of Miami v. Franklin Leslie, Inc., Fla.App. 1965, 179 So.2d 622.
We do not discuss appellees’ point urging that a competitor does not have the standing to commence litigation attacking a resolution of the City Commission. This point appears to have been settled adversely to the appellees in Keating v. State, Fla.1965, 173 So.2d 673, and City of Miami v. Franklin Leslie, Inc., supra.
The final decree is reversed, and the cause is remanded with directions to enter a decree in accordance with the view expressed herein.
Reversed.

. An escrow agreement provided:
“J & R Restaurant Corporation agrees to purchase the license for $3,500.00 provided (1) necessary permission can be obtained from the City of Miami (including a zoning variance) and the State of Florida to transfer the license to J & R Restaurant Corporation and remove the license to 68 West Flagler Street, and (2) the license is such as to permit J & R Restaurant Corporation to operate a liquor bar and package store in conjunction with a restaurant at 68 West Flagler Street. If the foregoing conditions are met, J & R Restaurant Corporation will pay the cost of renewing the license.”

. The pertinent portion of the resolution is as follows:
“WHEREAS, * * * this Commission deems it advisable in the interest of the general welfare of the City of Miami to grant the variance requested on the ground that a refusal would result in practica1 difficulties and unnecessary hardship to the applicant under a C-3 (Central Business) District;
“NOW, THEREFORE, BE IT RESOLVED BY THE COMMISSION OF THE CITY OF MIAMI, FLORIDA:
“Section 1. That the application of J & R Restaurant Corporation for a variance from Ordinance No. 6871, Article XXVII, Section 1 (2) to permit relocation of liquor license from 281 West Flagler Street to 68 West Flagler Street, being 368' from nearest liquor licensee (500' required); location in a C-3 (Central Business) District at 68 West Flagler Street, Lot 9, Block 123N, Miami (B-41), be and the same is hereby granted. * * * ”

. The minutes of the City Commission are, in part, as follows:
“Attorney John Q. Poole, Jr., representing J & R Restaurant Corporation, appeared to appeal from an adverse recommendation of the Planning Board on Ms client’s application for variance permit for relocation of liquor license. * * * He stated that this license was to be used in connection with a high-class restaurant to bo located in the new Concord Building. * * * He stated further, in response to a question by the Mayor, that ■the location was properly zoned for such mse, the only variance required being from the distance limitation between similar types of businesses. * * *
“In response to a question by the May- or, Attorney Norman Solomon stated that the Crossroads Bar was in operation in this area and was objecting to the application. * * *
$ ‡
“Mr. Solomon stated the objectors were not opposed to a restaurant in this establishment, and the serving of alcoholic beverages in connection with the restaurant operation, but were opposed to the establishment of a bar, which was in their plans.
“Attorney Jules Arkin, representing the Concord Building, appeared and stated that bis client * * * had already secured five and ten-year leases from some of the finest law firms in the City, and that in order to properly serve these tenants it was necessary to provide them with adequate facilities for entertaining clients and accommodating their needs. * s *
* * * * *
“Mr. John E. Meyers appeared and stated he was the holder of the liquor license which had existed for ten years at the location presently occupied by the Concord Building. * * *
jfc # s}i J}c
“Mr. Poole stated that Mr. Meyers only had a package store license, and that a liquor bar license was required by the applicant, but that his client had nevertheless attempted to acquire Mr. Meyers’ license and had been told that it was not for sale. * * *
* * * * *
• “Mr. Aronovitz made the following statement:
There is no question in my mind but what a nice restaurant across from the Courthouse would be desirable in terms of the downtown area, and there is no reason why there shouldn’t be beverages served in connection with it, but some statement was made here that you could *235 have an exceptional license. What is the difference if you take an exceptional license ?
“Mr. Poole stated that unless the applicants could also operate a bar in connection with the restaurant the operation would not be financially feasible in view of the amount of rent which was demanded for these quarters and the costly capital investment for such a facility.
sjc $ # $ *
“Attorney Robert D. Zahner, representing Sam Wolfson of the Jockey Bar, appeared and stated that * * * a showing of hardship was necessary as a requisite for granting the requested variance, and that the applicants had alleged no hardship whatsoever and had devoted their argument altogether to the high type of restaurant they proposed to establish at this location. He pointed out that the establishment, if it were in fact as large as it was proposed to be, could qualify for a license to sell liquor in connection with the restaurant operation without any variance permit.

“Attorney Poole expressed the opinion that the distance limitation of the City with respect to liquor establishments was an antiquated law, and stated that attempts were being made at the present time to remove it. He stated that the fact that such a facility was so sorely needed in this area was in his opinion a sufficient hardship to justify its establishment.

“Mr. Poole: We have settled our differences with Mr. Meyers, and everybody is going to benefit, and we ask that the petition be voted on as it now stands.

“Mr. Kennedy: I thought you were still asking for this variance that you came before the Board on, and at the same time you are buying this other one and destroying it.
“Mr. Poole: That’s right; we will merge both licenses at the samé place and go on this license we are trying to get transferred now, and won’t use the package license at all.”