BARKDULL, Judge,
dissenting.
I respectfully dissent from the majority opinion in this cause. The impact of the opinion is to approve the creation of a new business use district in the middle of a residential area, an area devoted exclusively to motels, apartments, and single family residences. To better understand the physical characteristics of the property involved, a copy of petitioner’s Exhibit K is incorporated in this opinion, as follows:

*1202

*1203 The property involved is that shaded in black, immediately on the west side of State Road AIA. It is surrounded by a motel development on the east side of AIA; motels fronting on Atlantic Ocean on the right side on Exhibit K; on the north side by a bridge to Hibiscus Island; on the west by a waterway; across the waterway, single family homes on Atlantic Island in a RU-1 zoning classification; and on the south by a RU-4 multiple family use district. There is no commercial property on the west side of State Road AIA south of Ocean Beach Boulevard, also known as 163rd Street. The businesses along Ocean Beach Boulevard face this boulevard, and there is BU-2 zoning on the east side of AIA at the intersection of Ocean Beach Boulevard. The fishing pier referred to in the majority opinion extends easterly from an extension of Ocean Beach Boulevard; the nightclub referred to is located on Fairyland Island. There is another fishing pier at the south end of Haulover Park, to the bottom right off of Exhibit K. See: Sunny Isles Fishing Pier, Inc. v. Dade County, 79 So.2d 677 (Fla.1955). The only restaurants and stores closely situated to the area are along Ocean Beach Boulevard and to the north thereof, along AIA. The one non-conforming use on the east is now a defunct drive-in. The. record is unclear as to whether or not a small parcel to the south, along the western side of AIA, is in use by a Howard Johnson ice cream shop. There is testimony in the record that there is no commercial use along the'west side of AIA from Ocean Beach Boulevard on the north to Haulover Park on the south, which appears at the bottom on Exhibit K.
The property owner acquired this property on October 8, 1974. He prepared an application for a boundary change, commencing at least by February 18, 1975, per letter attached to Application for Zoning Change; the application, in fact, is dated February 25, 1975. The property owner had previously owned this property, so there is no question but that he knew what the zoning on it was at the time he acquired it. He immediately sought to change the zoning. He applied for a use variance per the application, although the County Commission granted “A district boundary change from RU-4 (Apartment House and Hotel) and RU-4A (Hotels and Motels) to BU-1 (Neighborhood Business).”, notwithstanding the recommendation of the Zoning Director that this application be denied:
* * * * * $
“Application should be denied with prejudice.
“This is a request for a spot zone in this area lying South of Sunny Isle Ocean Beach Boulevard which is almost entirely restricted to residential use contrary to the area lying North of Sunny Isle Ocean Beach Boulevard which is a combination of Motel and Business use, and the request is totally incompatible with this zoned and developed apartment house and motel area. If approved, the predominate RU-4 (Apartment Houses) and RU-4A (Apartment Houses and Motels) area, the integrity of this area would be violated and it would constitute a harmful intrusion into this multiple family residential neighborhood.
“There is more than sufficient commercially developed property on Sunny Isle Ocean Beach Boulevard and on AIA, North of Sunny Isle Boulevard to serve this apartment house and motel area, and to approve this unneeded business at this location will promote additional requests of business zoning South of Sunny Isle Ocean Beach Boulevard. It should be pointed out that in this area South of Sunny Isle Ocean Beach Boulevard, there are several large complexes of apartment houses of great density which permit food and drug stores within the complexes, which if the demand justifies, can be installed to serve the needs of the residences South of Sunny Isles Ocean Beach Boulevard.”
If the application was for the purpose of securing a variance, it should have been denied under the following authorities. Elwyn v. City of Miami, 113 So.2d 849 (Fla. 3rd D.C.A. 1959); Board of Adjustment of City of Fort Lauderdale v. Kremer, 139 *1204 So.2d 448 (Fla. 2nd D.C.A. 1962); Allstate Mortgage Corporation of Florida v. City of Miami Beach, 308 So.2d 629 (Fla. 3rd D.C.A. 1975). Because there was not hardship, hardship (if any) was self-created; there was, in fact, no district boundary change as enacted by the County Commission in the resolution under attack. A district boundary change would be an alteration of an existing use district. What, in fact, the property owner received was the creation of a completely new use district within a RU-4A zoned area. This action on the part of the County Commissioners, which was sustained by the trial court, is a blatant example of spot zoning. It is a complete departure from the residential character of the neighborhood; it permits the development of drive-in business facilities, which are unneeded in the area. There is ample evidence that the commercial area along Ocean Beach Boulevard and north from the boulevard, along the west side of AIA, is sufficient to serve the residents of the area. The evidence indicated that the highrise developments to the southwest of the property have in-house commercial developments to serve their tenants. To permit this spot zoning or “cancer” on the west side of AIA would subject the entire area south of this property to the north boundary of Haulover Park being zoned BU-1 for commercial activity, and this court should not countenance such spot zoning. Smith v. City of Miami Beach, 213 So.2d 281 (Fla. 3rd D.C.A. 1968); County of Brevard v. Woodham, 223 So.2d 344 (Fla. 4th D.C.A. 1969).
Therefore, I would reverse the final judgment under review, and return the matter to the trial court with directions to quash the action of the County Commission creating this new use district.