507 So.2d 41 (1987)
BELHAVEN IMPROVEMENT ASSOCIATION, INC.
v.
The CITY OF JACKSON and the First Presbyterian Church of Jackson, Mississippi.
No. 56440.
Supreme Court of Mississippi.
March 18, 1987.
Rehearing Denied June 3, 1987.
*42 Michael Farrell, Satterfield & Allred, Jackson, for appellant.
Gay Dawn Horne, Eugene A. Simmons, Richard A. Montague, Jr., Wells, Moore, Simmons & Stubblefield, Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
*43 ROY NOBLE LEE, Presiding Justice, for the Court:

Introduction and Facts
This is an appeal by the Belhaven Improvement Association, Inc. (hereinafter "BIA"), from the March 4, 1985, order of the Circuit Court of the First Judicial District of Hinds County, Mississippi. That order denied BIA's motion to reconsider the Circuit Court November 21, 1984, order which dismissed BIA's appeal to the circuit court of a rezoning decision made by the City of Jackson (hereinafter "City"). The circuit court gave the following reason for its order dismissing BIA's appeal:
I.
The Belhaven Improvement Association, Inc., lacks standing to bring this Appeal because it is not a "person aggrieved" by the decision of the City Council of Jackson, Mississippi, rezoning the property located at 747 Belhaven Street, Jackson, Mississippi. The Belhaven Improvement Association, Inc. is not a "person aggrieved" because it does not own, nor does it have an interest in, property which is or may be affected by the rezoning of the property at 747 Belhaven Street.
II.
The Court does not consider nor does it rule upon the other grounds raised in the motion to dismiss filed by the Intervenor/Appellee, because the Court's determination that the Association does not own, nor does it have an interest in, property affected by the rezoning is dispositive.
On February 15, 1984, the First Presbyterian Church of Jackson, MS (hereinafter "Church"), filed with the Zoning and Sign Administration of the City Planning Board an application seeking to rezone the property at 747 Belhaven St., commonly known as the "Overstreet House," from R-2 to Special Use Religious Institution District, together with a variance for a second tract of land which is not involved in this appeal. The City Planning Board Rezoning Request Investigation and Report showed that the lot at 747 Belhaven St. is an elevated residential lot and that its abutting uses on the north, south and east are single-family, and, on the west, church gym.
A hearing was set on the Church's rezoning application for March 8, 1984, before the Zoning Hearing Committee of the City Planning Board. Prior to the hearing date, the Jackson City Planning Board received a number of letters from people who live in close proximity to the tract of land in question, in opposition to the rezoning. Three Belhaven residents appeared before the Zoning Hearing Committee and spoke in opposition to the Church's application, including attorney Mike Farrell who appeared representing members of the neighborhood and BIA. At no time was the participation of BIA questioned.
Among the exhibits introduced at the March 8 hearing by the protestors were a petition signed by 13 Belhaven residents opposing the rezoning; a second petition signed by 32 Belhaven residents opposing the rezoning; and a separate written statement opposing the rezoning. Among the exhibits introduced by the Church at the hearing were statements of support for the Church's application signed by Belhaven residents. The record contains 129 statements of support for the rezoning of the Overstreet property from Belhaven families who are members of the First Presbyterian Church, another eighteen (18) statements of support from Belhaven families with children attending First Presbyterian Day School, and twenty-two (22) statements of support from Belhaven families who are either non-parents or parents of children not yet school age. There are two hundred forty-one (241) families in the Church who live in Belhaven. It was the opinion of the Assistant City Planning Director and her staff that the property should not be rezoned to a special use classification. However, the Zoning Hearing Committee voted 4-2 to recommend the approval of the rezoning.
The decision of the Zoning Hearing Committee was followed by a number of letters from Belhaven residents to the Jackson *44 City Planning Board in opposition to the Church's proposed rezoning. At a meeting held on March 28, 1984, the Jackson City Planning Board voted 7-3 to recommend denial of rezoning the property at 747 Belhaven.
The Church sought action from the Jackson City Council to reject the March 28, 1984, recommendation of the City Planning Board. At a May 23, 1984, meeting, the Jackson City Council took up for consideration the Church's request for rezoning. Attorney Mike Farrell again spoke on behalf of BIA and a number of Belhaven residents. The participation of BIA was not objected to. The Church has stated that the exterior of the Overstreet house will be restored and the interior rehabilitated, that it will house the kindergarten temporarily and that it will then be utilized by the Church's Christian education program and the Church's Boy Scout troop. BIA did not object to a temporary rezoning.
At its July 3, 1984, meeting, the Jackson City Council voted to grant that part of the Church's petition which sought to have the property at 747 Belhaven rezoned and changed from R-2 (single-family and two-family) residential district to special use/religious institutions district with four conditions set forth as to the use of the property:
1. For a minimum period of seven (7) years, the property is to retain its residential appearance; and
2. For a period of fifteen (15) years a minimum front yard setback of twenty-five feet, rear yard setback of twenty feet and east side-yard setback of fifteen feet shall be maintained; and
3. The height restriction on the property shall be 35 feet or 2 1/2 stories; and
4. The maximum lot coverage shall not exceed between 40 and 60%.
On July 13, 1984, pursuant to Miss. Code Ann. § 11-51-75 (1972), BIA appealed to the circuit court. On July 17, 1984, Mayor Dale Danks signed BIA's bill of exceptions. The ordinance was certified by the city clerk and recorded in the minutes of the Council in Minute Book "3-Y" at pages 419-420 on July 31, 1984. The ordinance was published in the Jackson Daily News on August 7, 1984.
On September 25, 1984, the circuit judge entered an order authorizing the Church to intervene in the action as an appellee and enter its appearance and making the Church a party in this case. On October 17, 1984, Church filed a motion seeking to dismiss BIA's appeal, asserting, among other things, that BIA, a Mississippi non-profit corporation, lacked standing to bring the appeal because it is not a "person aggrieved" by the rezoning decision of the City Council under Miss. Code Ann. § 11-51-75. The Church submitted a number of affidavits in support of its motion to dismiss, including affidavits from four members of the Church, one of whom lived in Belhaven from 1974 to 1983, and three of whom still live in Belhaven. Not only did they express their opposition to the position taken by BIA, but also they declared that they had never received notice as to BIA's meetings and elections.
On November 9, 1984, also the date of the circuit court hearing of the motion to dismiss, ten individual property owners moved the circuit court to be allowed to intervene in the case as appellants, stating that a bill of exceptions was timely filed in this matter by BIA; that the intervenors are all property owners in the immediate vicinity of the rezoned property, who have a direct interest in the use of the rezoned property; and that the intervenors participated in this matter below by signing petitions, which were submitted to the zoning committee of the City of Jackson. On November 21, 1984, the circuit court denied the motion to intervene because the 10-day time limit within which to file a bill of exceptions under § 11-51-75 had expired. The would-be intervenors did not appeal or attempt to appeal. On the same day, November 21, 1984, the circuit court entered an order dismissing BIA's appeal for the reason previously quoted above. (Lack of standing)
On December 3, 1984, BIA filed a motion asking the circuit court to reconsider its November 21, 1984, order. In its motion, BIA stated that it was incorporated on July *45 28, 1965, as a non-profit civil improvement society, and that the bylaws stated "The membership of this corporation shall be made up of persons who are residents or owners of property in the section of Jackson, Mississippi, known as the Belhaven Area." The charter of incorporation states that the purposes of BIA are, among other things, to approve or object to future zoning changes and to appear and file documents before the Jackson City Council or any other legal or governmental body. The City joined the motion to reconsider because it supports the participation of neighborhood associations in various public arenas.
BIA filed several affidavits stating that BIA and other homeowner associations in the area have represented their homeowners before Jackson city government and Miss. courts, and that such representation is of great importance. One such affidavit states that the members of BIA are homeowners and residents of the area commonly known as the Belhaven Area, generally bounded by Interstate 55, Fortification Street, North State Street, and Riverside Drive in Jackson, MS. Another affidavit for the Church states that the President of BIA informed the affiant that every residential property owner in Belhaven is a member of the association. BIA has not disputed this claim, and the Church has made the most of it. If this is true, the Church members who live in the Belhaven area and the Church itself are members of BIA.
The decision to oppose the Church's rezoning was made by those persons purporting to be officers and directors of BIA after a meeting attended by approximately 20 members of BIA. It appears that no notice of any meeting electing these officers and directors was given to the Belhaven neighborhood as a whole. No notice of the meeting, at which the original decision was made to oppose the Church's rezoning, was sent to the Belhaven neighborhood as a whole. Furthermore, no notice of the meeting at which the decision was made to appeal the zoning decision to the courts was given to the neighborhood as a whole. On March 4, 1985, the circuit court denied BIA's motion to reconsider its November 21, 1984, order, whereupon BIA appealed from the March 4 order to this Court on April 3.

Discussion of Questions

I.
At the outset, Church raises the questions: (1) is the order appealed from, overruling the motion to reconsider, a final judgment under Mississippi Code Annotated § 11-51-3 (1973) and (2) in the alternative, if the earlier order of dismissal is the one appealed from, is the appeal timely?
Without lengthy discussion, we are of the opinion that the order overruling the motion to reconsider is a final judgment for purposes of appeal. See Hill v. Consumer National Bank, 482 So.2d 1124 (Miss. 1986) and Woodham v. American Cyctoscope Co. of Pellam, New York, 335 F.2d 551 (5th Cir.1964). Further, from an examination of the record, we are of the opinion that the appeal is timely. Miss. Sup.Ct.Rule 48(f), Miss.R.Civ.P. 59(e), Shell Oil Co. v. Murrah, 493 So.2d 1274 (Miss. 1986); Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983); Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc., 784 F.2d 665 (5th Cir.1986); Fischer v. United States Department of Justice, 759 F.2d 461, (5th Cir.1985).

II.
The principal question presented to this Court is whether or not BIA has standing on this appeal. It contends that the lower court committed reversible error when it held that BIA lacked standing to appeal the rezoning decision of the Jackson City Council, holding that BIA was not a "person aggrieved" by the decision of the Jackson City Council, since BIA did not own or have an interest in the property sought to be rezoned.
There is a dearth of decisions in this state construing the words "persons aggrieved." Mississippi Code Annotated § 11-51-75 (1972) provides:
Any person aggrieved by a judgment or decision by the board of supervisors, *46 or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities... .
This Court has stated that "[A]ny property owner or person having an interest in property which is or may be affected by a permit or variance illegally issued or denied is an aggrieved party and may apply to the court for relief." Mayor, etc. City of Pontotoc v. White, 230 Miss. 698, 707, 93 So.2d 852, 856 (1957). Also, see City of Hattiesburg v. Colson, 236 Miss. 237, 240, 109 So.2d 868 (1959); and Puyper v. Pure Oil Co., 215 Miss. 121, 60 So.2d 569 (1952).
The Court approved the standing of Mississippi Insurance Underwriting Association under limited circumstances. That association, made up of all property insurers in the state, refused insurance coverage for Standard Products, Inc., but was ordered to provide insurance by the Mississippi Insurance Commission. The association was allowed to appeal. It was representative for all parties, since they were mandatorily members of the association. Each member's financial interest would have been adversely affected in the suit. This Court held that the legislature could not have intended all property insurers to be appellees had the association's decision been upheld by the Commission. Miss. Ins. Underwriting Ass'n v. Standard Products, Inc., 271 So.2d 405 (Miss. 1972).
The clear tendency during the past decade is to permit the property owner and environmental associations to seek judicial review of decisions which affect their members. 4 R. Anderson, American Law of Zoning § 27.15 (3d ed. 1986). Associations and environmental groups have often appeared in rezoning matters before the Jackson City Council, and seldom, if ever, have been questioned as to standing. Woodland Hills Conservation Corp., Inc. v. City of Jackson, 443 So.2d 1173 (Miss. 1983) (de facto standing). Appellee, City of Jackson, has filed a brief in this cause setting out that standing should be granted to such organizations, since they are helpful to the City and are fair and equitable in deciding the zoning questions involved.
Jurisdictions in the United States are divided on the question of standing. Many reasons appear in the appellant's brief:
Generally, a party seeking a zoning change is well-prepared and well-financed. Often, the individual property owners who will be affected by the zoning decision are caught by surprise. Moreover, the individual homeowners often lack the time and financial resources to engage in a protracted, full-scale zoning dispute. Homeowners associations bring to the zoning disputes the necessary expertise to see that the interests of the individual homeowners that make up their membership are protected. Also, such an association can see that the expenses are spread among a number of its members, thereby putting the individual landowners affected by the zoning change on an economic parity with the party seeking the zoning change.
The New York rule requires the Court to consider four factors, i.e.: (1) the capacity of the organization to assume an adversary position, (2) the size and composition of the organization as reflecting a position fairly representative of the community or interest which it seeks to protect, (3) the adverse effect of the decision sought to be reviewed on the group represented by the organization as within the zone of interests sought to be protected, and (4) the availability of full participating membership in the organization to all residents and property owners in the relevant neighborhood. Douglaston Civic Ass'n v. Galvin, 36 N.Y.2d 1, 364 N.Y.S.2d 830, 324 N.E.2d 317 (1974). Accord, Vassallo v. Penn Rose Civic Ass'n, 429 A.2d 168 (Del. 1981).
For a different view, see Lindsey Creek Area Civic Ass'n v. Consolidated Government of Columbus, GA, 292 S.E.2d 61, 63 (Ga. 1982).
*47 The federal view has been stated as follows:
Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested, requires the participation of individual members in the lawsuit.
Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383, 394 (1977); Glengary-Gamlin Protective Ass'n, Inc. v. Bird, 106 Idaho 84, 675 P.2d 344, 347-348 (1983); 1,000 Friends of Oregon v. Multnomah Co., 39 Or. App. 917, 593 P.2d 1171, 1174-1175 (1979).
For standing, the person(s) aggrieved, or members of the association, whether one or more, should allege an adverse effect different from that of the general public. Also, they should show the fact of a representative capacity, particularly of those adversely affected. An association should not be permitted to close out minority members, cutting off their views entirely, particularly where the effect on some individuals could be greater than the effect on the majority. Membership in the association should be limited to residents and property owners, which would avoid intermeddling and disproportionate representation.
We are of the opinion that the lower court erred in holding that BIA did not have standing in the appeal to the circuit court on the record before us. The facts relating to the question of standing must be more fully developed in an evidentiary hearing. The record must show the extent of interest, adverse effect, participation of the membership, and authority of BIA to act pursuant to its charter, by laws and minutes. While we do not embrace the entire New York test, it should be considered as helpful in developing and deciding the standing question.
We have considered the other arguments of appellant and appellees, and we reject them in view of our holding hereinabove. However, we point out that the individual property owners should have been permitted to intervene in the action, Ridgway v. Scott, Guardian, 237 Miss. 400, 114 So.2d 844 (1959) but, since they do not appeal from the circuit court to this court, BIA cannot be heard to complain. The judgment of the circuit court is vacated, and the cause is remanded to that court for remand to the Jackson City Council for an evidentiary hearing on the question of standing.
JUDGMENT VACATED AND CAUSE REMANDED TO THE LOWER COURT.
WALKER, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., not participating.