Larry D. O'BRYANT, Petitioner,

v.

The PUBLIC UTILITIES COMMISSION of the STATE OF COLORADO; Commissioners Ronald L. Lehr, Edythe S. Miller, and Andra Schmidt; and Mountain States Telephone and Telegraph Company, Respondents.

No. 87SA423.

Supreme Court of Colorado, En Banc.

July 17, 1989.

As Modified on Denial of Rehearing Sept. 18, 1989.

Hill & Robbins, P.C., Robert F. Hill, Karen A. Tomb and Ronald L. Wilcox, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Mark W. Gerganoff, Asst. Atty. Gen., Denver, for the Public Utilities Commission of the State of Colo., Commissioners Ronald L. Lehr, Edythe S. Miller and Andra Schmidt.

Sherman & Howard, Steven H. Denman and Lily D. Appelman, Denver, for Mountain States Tel. and Tel. Co.

Chief Justice QUINN delivered the Opinion of the Court.

The question in this case is whether the Colorado Public Utilities Commission, after rendering a decision on a dispute between a public utility and the public utility's customer and during the pendency of a judicial review proceeding filed by the public utility in which the commission and the customer have been named as respondents, may effectuate a settlement of the case with the public utility in a manner that modifies the prior decision of the Public Utilities Commission and, by entering into the settlement agreement, obtain the dismissal of the application for judicial review of the prior decision despite objections from the customer of the public utility. In approving the settlement agreement and granting the motion to dismiss the public utility's application for judicial review, the district court concluded that, notwithstanding the customer's nonparticipation in the settlement agreement, the agreement was fair and did not prejudice the public utility or the customer. We reverse the judgment and remand for further proceedings.

I.

During 1984 Larry D. O'Bryant received local telephone service from Mountain States Telephone and Telegraph Company (Mountain Bell) and long distance service from AT & T Communications of the Mountain States, Inc. (AT & T Communications).

Because Mountain Bell and AT & T Communications had entered into a private contract which authorized Mountain Bell to collect from its customer the long distance charges of AT & T Communications, O'Bryant would receive one monthly bill from Mountain Bell which included his AT & T Communications charges. In May 1984 O'Bryant received his monthly bill from Mountain Bell for $165.48, of which $24.18 was for Mountain Bell's local charges and $141.30 was for AT & T Communications' long distance charges. O'Bryant was unable to pay the entire bill, so on May 10, 1984, he remitted payment of $24.18 to Mountain Bell for local charges and noted on the bill that he would pay later the long distance charges of AT & T Communications. On May 18, 1984, Mountain Bell informed O'Bryant by written notice that unless he paid the remainder of his May bill, Mountain Bell would disconnect his local service. O'Bryant failed to pay the remainder of his bill, and on May 30, 1984, Mountain Bell disconnected O'Bryant's local service.

On July 11, 1984, O'Bryant filed a pro se complaint with the Public Utilities Commission (PUC or commission) pursuant to section 40–6–108(1)(a), 17 C.R.S. (1984),[1] and based on the then existing Rule 13(b) of the Rules Regulating the Service of Telephone Utilities (hereinafter referred to as Rule 13(b)), which stated that "[s]ervice shall not be discontinued or refused for failure to pay any indebtedness except as incurred for utility service rendered by the utility in the State of Colorado."[2] O'Bryant alleged

---

**1.** Section 40–6–108(1)(a), 17 C.R.S. (1984), states:

Complaint may be made by the commission on its own motion or by any corporation, ·person, chamber of commerce, or board of trade, or by any civic, commercial, mercantile, traffic, agricultural, or manufacturing association or organization, or by any body politic or municipal corporation by petition or complaint in writing, setting forth any act or thing done or omitted to be done by any public utility, including any rule, regulation, or charge heretofore established or fixed by or for any public utility, in violation, or claimed to be in violation, of any provision of law or of any order or rule of the commission.

**2.** Rule 13(b) in its entirety states:

Delinquency in payment for service rendered to a previous occupant of the premises to be served and unpaid charges for services or facilities not ordered by the present or prospective subscriber, or failure to pay directory advertising charges, or any other indebtedness except as incurred for utility service rendered by the utility in the State of Colorado shall not constitute a sufficient cause for refusal of service to a present or prospective subscriber; provided, however, the utility may decline to furnish service at the same premises for the use of a delinquent subscriber by subterfuge in any manner. Subterfuge includes, but is not restricted to an application for service at a given location in the

in his complaint that Rule 13(b) prohibited Mountain Bell from disconnecting its service to him for nonpayment of the long distance service charges of AT & T Communications and, further, that since he paid his local charges for the month of May, Mountain Bell violated Rule 13(b) by disconnecting his local service. O'Bryant in his complaint requested that his telephone be reconnected, that Mountain Bell not be permitted to require a security deposit before reconnection, and that the PUC order any further relief as may be appropriate.

Pending a hearing on O'Bryant's complaint, the PUC ordered Mountain Bell to reconnect O'Bryant's local telephone service without payment of a security deposit. O'Bryant paid the remainder of his May 1984 bill on August 15, 1984, and a few days thereafter Mountain Bell reconnected his local telephone service. Following the PUC order, Mountain Bell filed a motion to dismiss O'Bryant's complaint as moot because O'Bryant had paid his outstanding long distance charges and Mountain Bell

had reconnected his local service. The PUC denied the motion on the basis that there still existed the issue of Mountain Bell's alleged violation of Rule 13(b).

AT & T Communications petitioned to intervene in the proceeding and was permitted to do so. O'Bryant, who was now represented by counsel, and Mountain Bell and intervenor AT & T Communications filed a stipulation of facts with the PUC, and all the parties thereafter submitted motions for summary judgment. In October 1985 a hearing examiner issued a recommended decision pursuant to section 40–6–109(2), 17 C.R.S. (1984).[3] In the recommended decision, the hearing examiner noted that Rule 13(b) had been in existence for over a decade, that Mountain Bell and AT & T Communications had not sought permission from the PUC to deviate from the rule but rather had attempted to evade the rule by entering into a confidential contract, and that the PUC could not permit Mountain Bell and AT & T Communications to "simply ignore the rule." [4] The hearing

name of another party by an applicant whose account is delinquent and who continues to reside at the premises. Service shall not be discontinued or refused for failure to pay any indebtedness except as incurred for utility service rendered by the utility in the State of Colorado.

4 C.C.R. 723–2 (1977).

Rule 13(b) was amended in 1986 to provide that under some circumstances a local exchange telephone utility may decline to furnish telephone service to a subscriber for failure to pay indebtedness incurred for service provided by a long distance telephone utility. We are not concerned, however, with the amended Rule 13(b), since it is not applicable to the case before us.

Mountain Bell's action in disconnecting O'Bryant's telephone service was based on Rule 13(a) and (c), which authorized disconnection for nonpayment of any sum due for utility service upon notice to the customer. 4 C.C.R. 723–2 (1977).

3. Section 40–6–109(2), 17 C.R.S. (1984), authorizes the commission to assign a complaint filed with the commission to a hearing examiner who, at the conclusion of the hearing, is required to "promptly transmit to the commission the record and exhibits of said proceeding together with a written recommended decision which shall contain his findings of fact and conclusions thereon, together with the recommended order of requirement."

4. The hearing examiner's decision stated in part:

This case is doricly simple. In 1973 this Commission promulgated a rule which specifically prohibited the practice of Mountain Bell in this case, i.e., charging for services rendered by another utility such as AT & T. While it is true that old relationships between telephone utilities have changed as a result of divestiture, the rule itself hasn't changed. Nor has anyone asked that it be changed as a result of divestiture (or for any reason), or, alternatively, sought a waiver of the rule's impact because of hardship, costs, etc.

Instead, two telephone utilities sought to get around the rule in part by having one utility file some vague and nebulous tariff sheets that do not on their face make clear that both utilities' services will be charged by the one, and then entering into a "confidential" contract to complete the deal. In effect this presented the public and Commission with a *fait accompli*, all in clear violation of a rule that had been in existence for over a decade and which both utilities were charged with knowledge of.

\* \* \* \* \* \*

Well, the conduct of Mountain Bell in this matter, clearly in violation of Rule 13, PUC Rules Regulating the Service of Telephone Utilities, cannot be said to be lawful.... As such, the conduct of Mountain Bell must be stopped until either the rule is changed or a waiver granted. To allow the utility to simply ignore the rule cannot be allowed.

The Examiner notes that this is not a comment on the merits of whether Mountain Bell

examiner entered a recommended order requiring Mountain Bell to immediately cease from disconnecting any of its customers for failure to pay any charges except for services rendered by Mountain Bell and to restore service to customers currently disconnected for failure to pay for other telephone service.

Mountain Bell and AT & T Communications filed joint exceptions to the recommended decision on several grounds, including the following: that the recommended decision was contrary to law, because Rule 13(b) was promulgated in 1973 before the divestiture of the Bell System and was not intended to prohibit Mountain Bell's disconnection of O'Bryant's local service under the circumstances of this case; that the hearing examiner's recommended decision improperly expanded O'Bryant's complaint into a class action; and that the hearing examiner's decision contained findings unsupported by the record. In responding to the exceptions O'Bryant argued, *inter alia*, that the hearing officer's recommended decision did not enlarge the complaint into a class action, since the complaint was directed to a particular practice, *i.e.*, disconnection of local service, and that statewide relief from such practice was mandated by virtue of the PUC's statutory responsibility to regulate utility service. The PUC denied the exceptions of Mountain Bell and AT & T Communications, stating in its order that it was "fully persuaded by the factual and legal arguments set forth in Mr. O'Bryant's response to the joint exceptions" and that O'Bryant's response was "fully dispositive of the various matters raised in the joint exceptions," and then adopted the hearing examiner's recommended decision as its own.

Mountain Bell and AT & T Communications filed applications for rehearings,

which were denied. On March 21, 1986, Mountain Bell, pursuant to section 40–6–115, 17 C.R.S. (1984), filed an application for a writ of certiorari or review in the Denver District Court.[5] Named as respondents in the complaint were O'Bryant, the PUC, and individual members of the PUC. Mountain Bell's complaint alleged that the PUC had improperly resolved O'Bryant's complaint by summary judgment, that the PUC had misapprehended the purpose of Rule 13(b), that the PUC's application of Rule 13(b) constituted an *ex post facto* application of the rule, that the PUC decision violated Mountain Bell's right to due process of law and equal protection of the laws, that the PUC improperly expanded O'Bryant's complaint into a class action, and that the PUC decision was contrary to law and was unsupported by the record. The district court issued a writ of certiorari or review requiring the PUC to certify and file the record in court on or before April 21, 1986. The PUC filed an entry of appearance in the case, and O'Bryant filed an answer in which he sought a dismissal of the complaint with prejudice, attorney fees and costs, and other relief.

Mountain Bell and the PUC filed a "Joint Motion to Dismiss" Mountain Bell's complaint for judicial review on the basis that Mountain Bell and the PUC had settled all contested matters. Attached to the joint motion to dismiss was a settlement agreement that contained the following relevant provisions: (1) a stipulation that the PUC decision requiring Mountain Bell to cease disconnecting its customers for failure to pay charges, except for services furnished by Mountain Bell, was rendered moot by an amended Rule 13 which would allow Mountain Bell to disconnect its service for failure to pay the long distance charges of AT & T Communications; (2) a stipulation that

should ultimately be allowed to disconnect customers for failure to pay both its service and other telephone service. Rather, this decision is a comment on the methods currently used to achieve that end, particularly when there's an existing rule prohibiting the practice.

**5.** Section 40–6–115, 17 C.R.S. (1984), requires that a judicial review of a PUC decision be

commenced by applying to the district court for a writ of certiorari or review. The writ is returnable not less than thirty days after its issuance and requires the PUC to certify its record to the court, whereupon the court shall conduct a hearing on the application for judicial review. *See Silver Eagle Services, Inc. v. Public Utilities Commission,* 768 P.2d 208 (Colo.1989).

the portion of the PUC order requiring Mountain Bell to immediately restore service to customers whose telephones were disconnected in violation of Rule 13(b) be modified in such a manner as to require reconnection only upon the customer's request; (3) a stipulation that the PUC specifically agreed that its prior decision was not a finding by the PUC that Mountain Bell had willfully or intentionally violated the provisions of Rule 13(b).

O'Bryant, who was not a party to the settlement agreement, objected to the motion to dismiss and asserted that the PUC was without authority to enter into the agreement or to modify its prior decision when the settlement was made with only one party to the judicial review proceeding. The district court approved the settlement agreement and dismissed the case, noting that the settlement was reached without the participation and over the objection of O'Bryant, who was a named defendant in the case, but that he had suffered no prejudice as a result of the settlement.

O'Bryant thereafter filed this appeal. He challenges the judgment of dismissal on the basis that the PUC exceeded its authority when it entered into the settlement agreement with Mountain Bell to modify its previous decision. Mountain Bell and the PUC, on the other hand, claim that O'Bryant lacks standing to appeal the district court's judgment of dismissal because he received all the relief which he sought in the complaint filed with the PUC, and, alternatively, that the settlement agreement underlying the judgment of dismissal is not contrary to law.

## II.

We first address the threshold issue of standing—that is, whether O'Bryant has standing to challenge on appeal the judgment of dismissal when, as here, the dismissal is predicated on a settlement agreement between the PUC and Mountain Bell during the pendency of a judicial review proceeding filed by Mountain Bell and naming the PUC and O'Bryant as respondents, and the settlement agreement modifies the

prior decision of the PUC and is executed over the objection of O'Bryant.

## A.

▮▮▮ The question of standing involves the fundamental consideration of whether O'Bryant has asserted a legal basis on which a claim for judicial relief can be predicated. Resolution of the standing issue involves two considerations: (1) whether the party seeking judicial relief has alleged an actual injury from the challenged action; and (2) whether the injury is to a legally protected or cognizable interest. *See Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977); *accord, Denver Center for Performing Arts v. Briggs*, 696 P.2d 299 (Colo.1985); *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission*, 620 P.2d 1051 (Colo.1980). These two considerations provide the framework for determining whether the asserted legal basis for a claim—whether constitutional, statutory, or otherwise—can properly be understood as granting a person in O'Bryant's position a right to judicial relief. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Friends of Chamber Music v. City and County of Denver*, 696 P.2d 309, 315 (Colo.1985); *State Board For Community Colleges and Occupational Education v. Olson*, 687 P.2d 429, 434 (Colo.1984).

▮▮▮ The "actual injury" element of standing need not consist of a direct pecuniary loss. In *Dodge v. Department of Social Services*, 198 Colo. 379, 600 P.2d 70 (1979), for example, we accorded standing to taxpayer-citizens to challenge the use of state funds to finance nontherapeutic abortions as contrary to the state constitutional prohibition against expenditure of public funds except upon appropriation by the legislature, notwithstanding the absence of any direct economic injury to the interests of the taxpayers. Similarly, in *Conrad v. City and County of Denver*, 656 P.2d 662 (Colo.1983), we held that taxpayers had standing to seek a declaratory judgment that Denver's nativity scene displayed on the steps of the City and County Building violated the state constitutional prohibition

against granting a preference for any religious denomination or mode of worship. Moreover, in the context of administrative action, we have held that the injury-in-fact element of standing does not require that a party undergo actual injury, as long as the party can demonstrate that the administrative action "threatens to cause" an injury-in-fact. *CF & I Steel Corp. v. Colorado Air Pollution Control Commission*, 199 Colo. 270, 279, 610 P.2d 85, 92 (1980). What is required for an injury-in-fact, therefore, is that the alleged injury be sufficiently direct and palpable to allow a court to say with fair assurance that there is an actual controversy proper for judicial resolution. *Conrad*, 656 P.2d at 668; *cf. Asarco, Inc. v. Kadish*, — U.S. —, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (where state court renders a judgment interpreting federal law in a case in which the plaintiffs in original action lacked standing under federal standards governing federal courts, United States Supreme Court may nonetheless exercise its jurisdiction on certiorari and accord standing to defendant-petitioners, the losing parties below, to challenge the state court judgment on basis of allegation of serious and immediate threat to defendants' proprietary interests by reason of state court judgment).

■ Once a party has sufficiently alleged an injury-in-fact, it must then be determined whether the injury is to a legally protected interest for which judicial relief is available. *Warth*, 422 U.S. at 500, 95 S.Ct. at 2206; *Olson*, 687 P.2d at 435; *Conrad*, 656 P.2d at 668. Resolution of this question involves a consideration of whether the legal basis for the claim creates a right or interest that has been arguably abridged by the challenged action. *Olson*, 687 P.2d at 435. An affirmative answer to this question does not amount to an adjudication on the merits of the case, but rather means simply that the party seeking judicial relief has stated a claim by demonstrating the existence of a legal right or interest which has been arguably violated by the conduct of the other party. *Conrad*, 656 P.2d at 668; *Cloverleaf Kennel Club*, 620 P.2d at 1056; *Dodge*, 198 Colo. at 382, 600 P.2d at 71.

### B.

■ O'Bryant's claim of injury-in-fact from the judgment of dismissal has both noneconomic and economic components to it. The asserted noneconomic injury is the impairment of O'Bryant's interest, as a member of the public and as a public utility customer, to require the public utility to conform its actions to applicable PUC rules and to ensure that the PUC enforces its rules against public utilities in a manner consistent with the commission's statutory responsibilities. In addition, O'Bryant claims economic injury by virtue of the fact that the judgment of dismissal deprived him of any opportunity to seek damages against Mountain Bell for violation of a PUC rule and, by eliminating any obligation on the part of Mountain Bell to reconnect all its customers whose phone service had been disconnected in violation of Rule 13(b), also deprived him of any opportunity to recover attorney fees and court costs for successfully litigating his complaint before the PUC. We are satisfied that O'Bryant's asserted noneconomic and economic injuries, while arguably not severe, cannot be characterized as so indeterminate, indirect, or trivial as unlikely to be redressed by a favorable judicial decision. We therefore accept O'Bryant's assertion of injury-in-fact for purposes of his standing on this appeal.

### C.

The second inquiry in standing is whether O'Bryant's alleged injury-in-fact from the judgment of dismissal is an injury to a legal interest which entitles him to judicial redress. In answering that question we necessarily look to the Public Utilities Law to determine whether that statutory scheme reflects a legislative purpose to confer a legal right in a public utility customer to challenge the judgment of dismissal under the circumstances present here. *Clarke v. Securities Industry Association*, 479 U.S. 388, 401, 107 S.Ct. 750, 758, 93 L.Ed.2d 757 (1987). *See generally Cloverleaf Kennel Club*, 620 P.2d at 1058–59.

We are satisfied that the judgment of dismissal adversely affected a legally protected interest of O'Bryant so as to satisfy the second prong of the standing requirement.

The Public Utilities Law requires the PUC to enforce and obey all provisions of the constitution and statutes of this state affecting public utilities. § 40–7–101, 17 C.R.S. (1984). In carrying out this statutory mandate, the PUC is empowered to promulgate rules, such as Rule 13(b), and to conduct hearings on alleged violations of its rules. §§ 40–2–108 and 40–6–108, 17 C.R.S. (1984). The statutory scheme authorizes any person to file a complaint with the PUC for an alleged violation of any order or PUC rule; and once a complaint has been filed, the PUC is not required to dismiss the complaint because of the absence of any direct damage to the complainant. § 40–6–108(1)(a) & (d), 17 C.R.S. (1984). The commission is authorized to conduct hearings and to make findings of fact and appropriate conclusions in rendering a decision. § 40–6–109, 17 C.R.S. (1984). Judicial review is available to any party to the PUC proceeding, and the "commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceedings." § 40–6–115(1), 17 C.R.S. (1984).

In addition to the statutory responsibilities of the PUC in promulgating rules and conducting hearings, the Public Utilities Law authorizes any person to bring an action in any court of competent jurisdiction against a public utility for doing, causing to be done, or permitting to be done "any act, matter, or thing prohibited, forbidden, declared to be unlawful, [or omitting] to do any act, matter, or thing required to be done, either by the state constitution, any law of this state, or any order or decision of the commission." § 40–7–102(1), 17 C.R.S. (1984). The Public Utilities Law further provides that "[i]f the court finds that the act or omission was willful, the court, in addition to the actual damages, may award exemplary damages." *Id.* In those situations where a public utility has acted willfully in violating a PUC rule, therefore, section 40–7–102 is the stat-utory mechanism by which a person aggrieved by the public utility's conduct may seek exemplary damages. In addition, attorney fees and costs may be assessed against a public utility in those cases in which a party to a PUC proceeding successfully challenges a public utility's action and thereby renders a service on behalf of general consumer interests. *See Colorado Ute Electric Association v. Public Utilities Commission,* 198 Colo. 534, 544–45, 602 P.2d 861, 868 (1979); *Mountain States Telephone & Telegraph Co. v. Public Utilities Commission,* 195 Colo. 130, 134–36, 576 P.2d 544, 546–48 (1978).

The Public Utilities Law, in our view, creates in O'Bryant, as a member of the public, a legally protected and cognizable interest in ensuring that a public utility complies with the rules promulgated by the PUC and that the PUC enforces its rules in a manner consistent with its statutory responsibilities. *See Conrad,* 656 P.2d 662; *Dodge,* 198 Colo. 379, 600 P.2d 70. Putting this noneconomic interest of O'Bryant to one side, we are also satisfied that the Public Utilities Law creates a legally protected and cognizable economic interest in O'Bryant, as a public utility customer, in pursuing an action against a public utility for willful violation of a PUC rule to the detriment of public utility customers. *See* § 40–7–102(1), 17 C.R.S. (1984). The statutory claim for punitive damages is clearly designed to protect public utility customers as a class against violations of the Public Utilities Law and the orders, decisions, and rules of the PUC. Our case law authorizing the recovery of attorney fees and costs by a party to a PUC proceeding who renders a service on behalf of general consumer interests furthers this statutory design. *See Mountain States Telephone Co.,* 195 Colo. at 134–36, 576 P.2d at 546–48.

In light of the text, structure, and purpose of the Public Utilities Law, we conclude that O'Bryant's allegations of injury-in-fact to a legally protected interest are sufficient to accord him standing to challenge on appeal the district court's judgment of dismissal.

## III.

■ We turn now to consider whether the PUC, after rendering a decision on the dispute between Mountain Bell and O'Bryant, could properly enter into a settlement agreement with Mountain Bell without the participation of O'Bryant and then seek dismissal of a complaint for judicial review of the PUC decision over the protest of O'Bryant, who was a party to the judicial review proceeding. We hold that the PUC had no such authority.

■ The scope of the PUC's authority flows from Article XXV of the Colorado Constitution, but such authority may be restricted by the General Assembly through statute. *Miller Bros., Inc. v. Public Utilities Commission*, 185 Colo. 414, 431, 525 P.2d 443, 451 (1974). The Public Utilities Law is the organic legislation which places limitations upon the scope and exercise of the PUC's authority. While section 40–6–115, 17 C.R.S. (1984), provides for judicial review of a PUC decision in the district court and for appellate review in the supreme court, there is nothing in the statutory procedure for judicial and appellate review which authorizes the PUC, once a judicial review proceeding has been commenced, to alter or amend its decision by entering into a settlement agreement with only one party to the judicial review proceeding to the exclusion of the other party. On the contrary, the Public Utilities Law contemplates that the PUC, which obviously has no personal, economic, or other tangible interest in its decision, will act as a neutral decisionmaker in resolving the issues before it. Once judicial review is commenced in the district court by filing a petition for writ of certiorari, the PUC's obligation is to certify the record in a timely fashion and, if it so desires, to appear before the district court in support of its decision. *See* § 40–6–115(1), 17 C.R.S. (1984).[6]

In *Colorado Anti–Discrimination Commission v. Continental Air Lines, Inc.,* 143 Colo. 590, 355 P.2d 83 (1960), we addressed an issue similar to the one before us now. In the *Continental Air Lines* case, Marlon D. Green filed a complaint before the Colorado Anti–Discrimination Commission, in which he claimed that Continental Airlines had refused to employ him as an airline pilot because of his race. The Anti–Discrimination Commission conducted an extensive hearing and made findings that Continental Airlines was guilty of a discriminatory employment practice and ordered it to cease and desist from the practice. Continental Airlines then filed a petition for review in the district court, which remanded the case for additional findings on several limited questions. On remand of the case, the Anti–Discrimination Commission, without notice to the parties and without a hearing of any kind, withdrew its previous findings of fact, conclusions of law, and order, and proceeded to make new findings on all questions raised in the case. The district court then entered what was the functional equivalent of a judgment of dismissal on the basis that the questions initially raised in the judicial review proceeding were moot. On appeal this court considered whether the Anti–Discrimination Commission had jurisdiction to amend or enlarge upon its order after a party to the administrative proceeding had sought judicial review in the district court. In holding that the Commission had no such jurisdiction, we stated that "an administrative agency is without authority to change, alter, or vacate an order while review proceedings are pending in the district court, even as an inferior court is without authority to vacate or modify a judgment after writ of error has issued out of this court directed to such judgment." 143 Colo. at 594, 355 P.2d at 86; *see also Marr v. Department of Revenue*, 43 Colo.App. 36, 598 P.2d 155 (1979) (once judicial review action of department of revenue driver's license revocation order is commenced, department is without jurisdiction to enter any further orders, including an order staying the revo-

---

**6.** Section 40–6–115(3), 17 C.R.S. (1984), limits the district court's authority in reviewing a PUC decision to "either affirming, setting aside, or modifying the decision of the commission," and

does not authorize a remand of the case to the PUC for reconsideration of an issue already decided by the PUC. *Silver Eagle Services*, 768 P.2d at 214–15 (Colo.1989).

cation, until final disposition of the judicial proceedings); *Fischback & Moore of Alaska, Inc. v. Lynn*, 407 P.2d 174 (Alaska 1965) (recognizing general rule that when an administrative agency's order is appealed to a court, agency's power and authority over the matter is suspended because court's jurisdiction over subject matter must be complete and not interfered with or frustrated by concurrent action of administrative agency) (overruled on other grounds by *City and Borough of Juneau v. Thibodeau*, 595 P.2d 626, 629 n. 6 (Alaska 1979); *Westside Charter Service, Inc. v. Gray Line Tours*, 99 Nev. 456, 664 P.2d 351 (1983) (once appeal had been filed challenging administrative agency's decision, agency is without authority to act further on its decision until final decision on appeal is rendered).

Our decision in *Continental Air Lines* controls our resolution of this case. The PUC, by entering into the settlement agreement with Mountain Bell over the objection of O'Bryant, modified its prior decision in three distinct ways while judicial review proceedings were pending in the district court. First, the agreement stated that the PUC's prior decision requiring Mountain Bell to cease disconnecting its customers for failure to pay charges, except for those services provided by Mountain Bell, was rendered moot by an amended Rule 13(b) which would allow Mountain Bell to disconnect its service for failure to pay the long distance charges of AT & T Communications. Second, the agreement modified that part of the PUC's ruling which required Mountain Bell to immediately restore service to those Mountain Bell customers whose telephone services were disconnected in violation of Rule 13(b) by requiring reconnection only for those customers who asked that their local service be restored. Third, the agreement modified the PUC decision by stating that the PUC had not made a finding that Mountain Bell had willfully or intentionally violated the provisions of Rule 13(b). In light of the fact that the settlement agreement between the PUC and Mountain Bell had the effect of substantially modifying the prior decision of the PUC, and since such agree-

ment was effectuated after the commencement of a judicial review proceeding in the district court and without the consent and over the objection of the Mountain Bell customer who was a party to the judicial review proceeding, we hold that such attempt by the PUC to change or modify its prior decision was invalid and beyond its authority.

## IV.

In urging a contrary result, Mountain Bell and the PUC argue that the PUC, as a party to the judicial review proceeding, could enter into a settlement agreement with Mountain Bell over O'Bryant's objection, since O'Bryant no longer had any interest in the case. This argument, however, misses the point previously discussed that O'Bryant did have a legally protected interest in upholding the PUC's prior decision and that the settlement agreement and the judgment of dismissal with prejudice adversely affected O'Bryant's legally protected interests in several ways: first, the settlement agreement, along with the judgment of dismissal, deprived O'Bryant of his right to require Mountain Bell to comply with Rule 13(b) and to require the PUC to abide by its own rules in administering the statutory scheme affecting public utilities; second, the agreement and the ensuing judgment had the effect of impairing O'Bryant's prospective statutory claim for punitive damages against Mountain Bell for willful violation of Rule 13(b); and finally, the settlement agreement and judgment of dismissal deprived O'Bryant of any opportunity to recover attorney fees and costs against Mountain Bell for successfully litigating an issue that was related to general consumer interests.

We accordingly reverse the judgment of dismissal and remand the case to the district court for further proceedings, pursuant to the Public Utilities Law, on Mountain Bell's application for a writ of certiorari or review.