# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-SA-01129-SCT

*MIDSOUTH ASSOCIATION OF INDEPENDENT SCHOOLS, MISSISSIPPI DEPARTMENT OF FINANCE AND ADMINISTRATION, DAVID McRAE, IN HIS OFFICIAL CAPACITY AS STATE TREASURER, AND LIZ WELCH, IN HER OFFICIAL CAPACITY AS STATE FISCAL OFFICER*

*v.*

*PARENTS FOR PUBLIC SCHOOLS*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/2022 |
| TRIAL JUDGE: | HON. CRYSTAL WISE MARTIN |
| TRIAL COURT ATTORNEYS: | WILL BARDWELL |
| | JOSHUA TOM |
| | ROBERT B. McDUFF |
| | REX MORRIS SHANNON, III |
| | GERALD LEE KUCIA |
| | JACKIE RAY BOST, II |
| | BENJAMIN B. MORGAN |
| | M.E. BUCK DOUGHERTY, III |
| | BRIAN KELSEY |
| | DANIEL SUHR |
| ATTORNEYS FOR APPELLANTS: | BENJAMIN B. MORGAN |
| | M.E. BUCK DOUGHERTY, III |
| | JUSTIN L. MATHENY |
| ATTORNEYS FOR APPELLEE: | WILL BARDWELL |
| | SARAH GOETZ |
| | JOSHUA TOM |
| | ROBERT B. McDUFF |
| NATURE OF THE CASE: | CIVIL - UNCONSTITUTIONAL STATUTE |
| DISPOSITION: | VACATED AND RENDERED - 05/02/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.    This case concerns Senate Bill 2780—establishing the Independent Schools Infrastructure Grant Program—and Senate Bill 3064—allocating funds to the grant program. Because Parents for Public Schools (PPS) has failed to demonstrate an adverse impact sufficient to grant standing, this Court finds that PPS lacks standing to bring this lawsuit. Accordingly, the other issues raised on appeal are moot.

## FACTS AND PROCEDURAL HISTORY

¶2.    During the Regular Legislative Session of 2022, the Legislature passed two Senate Bills—2780 and 3064. Both of these bills were signed into law by Governor Reeves. Section twelve of Senate Bill 2780 created the Independent Schools Infrastructure Grant Program Act (ISIGP). ISIGP was to be administered by the Department of Finance (DFA), and it allowed independent schools to "apply for reimbursable grants to make necessary investments in water, wastewater, stormwater, broadband and other eligible infrastructure projects to be funded by the Legislature using Coronavirus State Fiscal Recovery Funds made available under the federal American Rescue Plan Act (ARPA)." Senate Bill 3064 funded ISIGP with $10 million from the Coronavirus State Fiscal Recovery Fund.

¶3.    On June 15, 2022, Parents for Public Schools (PPS)—a nonprofit organization founded in Jackson to help facilitate the engagement of parents and other community members in the improvement of public schools—filed a complaint in the Chancery Court of Hinds County. The complaint named DFA, David McRae—in his official capacity as state treasurer—and Liz Welch—in her official capacity as executive director of DFA—as defendants (collectively, DFA). The complaint alleged that ISIGP violated article 8, section

2

208, of the Mississippi Constitution and requested injunctive and declaratory relief. PPS asserted associational standing on behalf of its members.

¶4. On June 17, 2022, PPS filed a motion for a preliminary injunction to enjoin the implementation of Senate Bills 2780 and 3064 until the constitutionality of the laws could be determined. On July 14, 2022, DFA filed an answer to PPS's complaint. DFA also filed a response in opposition to the motion for a preliminary injunction on August 4, 2022. A scheduling order was entered on July 21, 2022, consolidating the motion for a preliminary injunction with a trial on the merits to be held on August 23, 2022.

¶5. On August 11, 2022, twelve days before trial, Midsouth Association of Independent Schools (MAIS) filed a motion to intervene in the case. MAIS claimed that it was permitted to intervene as of right under Mississippi Rule of Civil Procedure 24(a)(2). MAIS asserted that its interests were not sufficiently defended by DFA. Additionally, MAIS sought to challenge the constitutionality of section 208 under the First and Fourteenth Amendments, an issue not raised by either PPS or DFA. A hearing on the motion to intervene was set for August 23, 2022, the same day as the trial on the merits.

¶6. At the trial, the chancellor denied MAIS's motion to intervene, finding that the motion was untimely and that intervention would prejudice the existing parties. Furthermore, the chancellor found that MAIS's challenge to section 208's constitutionality was irrelevant to the case and that MAIS's interests were adequately represented by DFA. After denying MAIS's motion to intervene, the chancellor addressed PPS's claim for declaratory and injunctive relief. The chancellor found that PPS had established associational standing. The

3

chancellor also found that Senate Bills 2780 and 3064 violated section 208 of the Mississippi Constitution by appropriating public funds to private schools.

¶7.    Both DFA and MAIS appealed the judgment of the chancellor.

**ISSUES PRESENTED**

¶8.    The following issues were presented on appeal:

    I.    Whether PPS has standing to bring suit.

    II.    Whether Senate Bills 2780 and 3064 are constitutional under section 208 of the Mississippi Constitution.

    III.    Whether MAIS has a right to intervene.

Because we find the first issue to be dispositive, this Court need not address the second and third issues.

**STANDARD OF REVIEW**

¶9.    This Court reviews the question of standing de novo. ***Jackson Pub. Sch. Dist. v. Jackson Fed'n of Tchrs.***, 372 So. 3d 997, 1000 (Miss. 2023). When reviewing a challenge to constitutionality, "[t]his Court 'adhere[s] to the rule that one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusion affirmatively, and clearly establish it beyond a reasonable doubt.'" ***Saunders v. State***, 371 So. 3d 604, 614 (Miss. 2023) (second alteration in original) (quoting ***Loden v. Miss. Pub. Serv. Comm'n***, 279 So. 2d 636, 640 (Miss. 1973)).

**DISCUSSION**

¶10.    In order to bring suit, a party must establish standing.

    Quite simply, the issue adjudicated in a standing case is whether the particular

4

plaintiff had a right to judicial enforcement of a legal duty of the defendant or . . . whether a party plaintiff in an action for legal relief can show in himself a present, existent actionable title or interest, and demonstrate that this right was complete at the time of the institution of the action.

*City of Picayune v. S. Reg'l Corp.*, 916 So. 2d 510, 526 (Miss. 2005) (citing *Am. Book Co. v. Vandiver*, 181 Miss. 518, 178 So. 598, 599 (1938)). This Court has recently held that a colorable interest is no longer sufficient to establish standing. *Reeves v. Gunn*, 307 So. 3d 436, 439 (Miss. 2020), *overruling* *Fordice v. Bryan*, 651 So. 2d 998 (Miss. 1995). "However, 'the traditional articulation of "adverse impact" to describe when a party can assert standing to bring suit' survives." *Butler v. Watson (In re Initiative Measure No. 65)*, 338 So. 3d 599, 605 (Miss. 2021) (quoting *Reeves*, 307 So. 3d at 438-39). "For standing, the person(s) aggrieved, or members of the association, whether one or more, should allege an adverse effect different from that of the general public." *Belhaven Improvement Ass'n, Inc. v. City of Jackson*, 507 So. 2d 41, 47 (Miss. 1987). That being said, we also note that

[i]t is well settled that Mississippi's standing requirements are quite liberal. This Court has explained that while federal courts adhere to a stringent definition of standing, limited by Art. 3, § 2 of the United States Constitution to a review of actual cases and controversies, the Mississippi Constitution contains no such restrictive language.

*Araujo v. Bryant*, 283 So. 3d 73, 77 (Miss. 2019) (quoting *Davis v. City of Jackson*, 240 So. 3d 381, 384 (Miss. 2018)); *see also* *Van Slyke v. Bd. of Trs. of State Insts. of Higher Learning*, 613 So. 2d 872, 875 (Miss. 1993) ("[W]e have been more permissive in granting standing to parties who seek review of governmental actions." (citing *Bd. of Trs. of State Insts. of Higher Learning v. Van Slyke*, 510 So. 2d 490, 496 (Miss. 1987))).

¶11.    An association may assert standing on behalf of its members by demonstrating that

5

"(1) its members would otherwise have standing to sue in their own right, (2) the interest it seeks are germane to the organization's purpose, *and* (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Jackson Pub. Sch. Dist.*, 372 So. 3d at 1002 (internal quotation marks omitted) (quoting *Miss. Manufactured Hous. Ass'n v. Bd. of Aldermen of the City of Canton*, 870 So. 2d 1189, 1192 (Miss. 2004)).

¶12.   In her order, the chancellor found that PPS had established associational standing. Specifically, the chancellor found that "[n]either [PPS's] constitutional claim nor its request for injunctive relief require its members to participate in the present case[,]" that PPS was "founded to advocate for public schools and parents of public school students, and so its claim [was] germane to the organization's purpose" and that PPS and its members would suffer an adverse effect different from that of the general public if the laws were to be implemented.

¶13.   DFA argues that the chancellor erred by finding that PPS sufficiently demonstrated an adverse effect and, therefore, PPS failed to satisfy the first prong of associational standing—that its members would have standing to sue in their own right. This Court agrees. In order to establish standing, PPS is required to show that it would suffer an adverse impact different than that likely suffered by the general public. *Belhaven Improvement Ass'n*, 507 So. 2d at 47. PPS argues two bases for adverse impact—that the funding for private schools provided by ISIGP puts Mississippi public schools at a competitive disadvantage and that PPS members have taxpayer standing. This Court finds that PPS has failed to sufficiently

6

demonstrate an adverse impact that it suffers differently from the general public.

## I. Adverse Impact Based on Competitive Advantage

¶14. PPS asserts that it has associational standing to bring suit because its members would have standing to bring suit in their own right based on the adverse impact suffered due to the competitive advantage that ISIGP offers to private schools. PPS has demonstrated that its members include parents of Mississippi public school children along with teachers and other public school officials. Citing Mississippi's permissive standing requirements, PPS argues that its members—and therefore PPS itself—suffer the adverse impact of private schools receiving any government funding because educational funding is inherently limited and because "all appropriations should go to public schools." To support this contention, PPS notes the chronic underfunding of Mississippi public schools. PPS also argues that money that goes solely to the improvement of private school infrastructure draws students away from public schools, ultimately leading to less funding for those public schools that receive funds based on attendance. The chancery court agreed with PPS, finding that "[i]t is common sense that private schools compete with public schools for students." The chancery court also found that "[i]nfrastructure funding for private schools and only private schools also injures public schools and their students by legislating a competitive advantage for private schools to the detriment of public schools."

¶15. Importantly, the funding for ISIGP comes from federal ARPA money, specifically the Coronavirus State Fiscal Recovery Funds. These funds were given to the state by the federal government with the requirement that the funds be used for four categories of recovery:

7

(A) to respond to the public health emergency with respect to the Coronavirus Disease 2019 . . . or its negative economic impacts . . .

(B) to respond to workers performing essential work during the COVID-19 health emergency by providing premium pay to eligible workers of the State . . . that are performing essential work . . .

(C) for the provision of government services to the extent of the reduction of revenue of such State . . . due to the COVID-19 public health emergency . . . ; or

(D) *to make necessary investments in water, sewer, or broadband infrastructure.*

42 U.S.C. § 802(c)(1)(A)-(D) (emphasis added).

¶16.    Senate Bill 2780 directed a portion of these funds to a reimbursable grant program for independent schools under the fourth use requirement, for necessary investments in infrastructure. These specific federal funds were never earmarked by either the federal government or the state for educational purposes, have not been commingled with state education funds, are not for educational purposes and therefore cannot be said to have harmed PPS by taking finite government educational funding away from public schools. The funds were simply made available to aid in economic recovery due to the onset of COVID-19 and were to be used to support the four categories of recovery.

¶17.    PPS alleges that somewhere down the road, ISIGP will adversely affect the funding of public schools by legislating a competitive advantage to the independent schools who will receive the funds. This alleged future harm, however, is speculative and not sufficient to meet even Mississippi's permissive standing requirements. The dissent argues that this threatened injury is sufficient to convey standing to PPS. Diss. Op. ¶ 32. In support, the

8

dissent cites *Mississippi Manufactured Housing Ass'n*, 870 So. 2d at 1193-94. In *Mississippi Manufactured Housing Ass'n*, this Court relied on a case from Colorado holding that a threatened injury satisfied the injury requirement for standing. *See Colo. Manufactured Hous. Ass'n v. Pueblo Cnty.*, 857 P.2d 507, 510 (Colo. App. 1993). The Colorado Court of Appeals noted, however, that threatened injury had its limitations, stating, "[i]njury-in-fact, whether actual or threatened, requires that the alleged injury be 'sufficiently direct and palpable to allow a court to say with fair assurance that there is an actual controversy proper for judicial resolution.'" *Id.* (quoting *O'Bryant v. Pub. Utils. Comm'n*, 778 P.2d 648, 653 (Colo. 1989).[1] Furthermore, the *Mississippi Manufactured Housing Ass'n* Court found a specific, and not merely speculative, future harm—restrictions on areas where manufactured homes could be placed—that it determined would occur. *Miss. Manufactured Hous. Ass'n*, 870 So. 2d at 1194. Though permissive, the standing requirements in Mississippi likewise have limitations.

¶18.   PPS needed to "show in [itself] a present, existent actionable title or interest, and demonstrate that this right was complete at the time of the institution of the action." *City of Picayune*, 916 So. 2d at 526 (citing *Vandiver*, 178 So. at 599). The speculation of a future threatened harm alleged by PPS that this grant program will lead to a competitive disadvantage for Mississippi public schools does not demonstrate a "present, existent

---

[1] As a matter of fact, the plaintiffs in the Colorado case alleged that the threatened injury—loss of a sale—had already occurred once and, therefore, claimed the injury was not only threatened, but an actual injury-in-fact. *Id.* at 511; *Miss. Manufactured Hous. Ass'n*, 870 So. 2d at 1194 (noting that "[t]he plaintiffs had already lost one sale and would lose more in the future").

actionable title or interest[.]" *Id.* (citing *Vandiver*, 178 So. at 599). Nor is the threatened injury "sufficiently direct and palpable[.]" *Colo. Manufactured Hous. Ass'n*, 857 P.2d at 510 (internal quotation mark omitted) (quoting *O'Bryant*, 778 P.2d at 653). The chancery court erred by finding that PPS established associational standing.[2]

## II.     Adverse Impact Based on Taxpayer Standing

¶19.    Alternatively, PPS alleges that it has taxpayer standing to bring this suit. In *Araujo*, 283 So. 3d at 78, this Court determined that the plaintiffs, who "own[ed] property in the school district, pa[id] property taxes (a portion of which [were] designated to support [Jackson Public Schools]) and ha[d] children who attend[ed Jackson Public Schools]" sufficiently demonstrated taxpayer standing. This Court held that the plaintiff parents had experienced a different adverse effect than the general public because they were *ad valorem* taxpayers whose *ad valorem* taxes were being diverted from the public schools in their district to charter schools under a statute challenged by the plaintiff parents. *Id.*

¶20.    PPS argues that it is analogous to the parents in *Araujo* because its members "own property in their school districts, pay property taxes as well as state sales tax and federal income and gas tax, have children who attend the public schools, and allege that the Legislature has passed a law spending tax revenue in violation of the Mississippi

---

[2]The dissent also expresses concern that if PPS lacks standing to challenge these bills, then who or what does have standing? Diss. Op. ¶ 34. This Court is not tasked to determine what individual would have standing aside from PPS but rather, whether PPS has standing in the present case. Although we find PPS lacks standing in the present case, it is not hard to imagine numerous other parties who might have been entitled to ARPA funds under 42 U.S.C. § 802(c)(1)(D) for infrastructure improvements, dependent on the facts of their claim, that could demonstrate standing.

Constitution." This Court in *Araujo* distinguished its plaintiff parents, stating that they were "not simply general taxpayers challenging general governmental spending as unconstitutional." *Id.* Though PPS alleges it is similarly situated to the parents in *Araujo*, this Court finds that the members of PPS are "simply general taxpayers challenging general government spending" due to the federal nature of the funds at issue in this case. *Id.*

¶21.    The funds at issue in this case are federal funds, not state funds.  They are earmarked for specific infrastructure needs. They are not commingled with state funds.  They are audited to confirm their appropriate use as well as the timeliness of that use. State taxpayer standing is untenable under the facts of this case. The reasoning of the Arizona Supreme Court is instructive here:

> Payment of funds into the state treasury does not necessarily vest the state with title to those funds. . . . Custodial funds are not state monies. The term 'public funds' refers to funds belonging to the state and does not apply to funds for the benefit of contributors for which the state is a mere custodian or conduit . . . . It is within the power of the legislature to make appropriations relating to state funds, but funds from a purely federal source are not subject to the appropriative power of the legislature.

*Navajo Tribe v. Ariz. Dep't of Admin.*, 528 P.2d 623, 624-25 (Ariz. 1974); *see also Jordan v. Siegelman*, 949 So. 2d 887, 890-91 (Ala. 2006) (holding that the plaintiff lacked standing because taxpayer standing was based on the liability to replenish state public funds and that no liability existed when expended state funds were reimbursed with federal funds); *Chapman v. Bevilacqua*, 42 S.W.3d 378, 384 (Ark. 2001) (holding that no taxpayer standing existed to challenge the disbursement of federal funds that were "not derived from state taxpayer monies"). As noted above, the funds at issue are derived from the Coronavirus State

Fiscal Recovery Fund, a federally sourced fund. *See* S.B. 2780, Reg. Sess., 2022 Miss. Laws ch. 482, § 12(2). These funds are held by Mississippi in their own special fund and are not commingled with State funds. *See* Miss. Code Ann. § 27-104-321 (Supp. 2023). Furthermore, the recipients of the funds under ISIGP are subject to federal and state audits to confirm that the funds are being compliantly expended. *See* S.B. 3064, Reg. Sess., 2022 Miss. Laws ch. 66, § 5. Simply stated, these funds are for the use of all Mississippians who have suffered as a result of the response to the coronavirus pandemic.

¶22. PPS's challenge to the general government spending in this case is far too attenuated to bestow standing. The *Araujo* parents were challenging the diversion of their local and identifiable *ad valorem* taxes, whereas PPS is challenging the spending of federal money distributed to the state. The United States Supreme Court has held that "[a]s a general matter, the interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for Article III standing." ***Hein v. Freedom From Religion Found., Inc.***, 551 U.S. 587, 600, 127 S. Ct. 2553, 163 L. Ed. 2d 424 (2007).

¶23. Although Mississippi's requirements for standing are more permissive than Article III standing, PPS's interpretation stretches the requirement of adverse effect past the limits of Mississippi's permissiveness, especially given this Court's abolition of colorable interest standing. *See **Reeves***, 307 So. 3d at 438-39. The funds at issue in this case are not derived from state or local *ad valorem* taxes, but from federal treasury funds distributed to the state from the federal government for specific purposes unrelated to education. Therefore, PPS

is unable to establish standing based on its members' position as taxpayers.

**CONCLUSION**

¶24.    For the foregoing reasons, this Court finds that PPS lacks standing to bring this lawsuit. Therefore, this Court need not address the additional issues on appeal. Accordingly, we vacate the judgment of the Hinds County Chancery Court and render judgment dismissing PPS's complaint.

¶25.    **VACATED AND RENDERED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.  BEAM, J., CONCURS WITH SEPARATE WRITTEN OPINION. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**BEAM, JUSTICE, CONCURRING:**

¶26.    I fully concur with the majority. I write separately to reiterate that we are not ruling on state funds but American Rescue Plan Act (ARPA) funds.  As the majority writes, the ARPA funds were given to the State to be used in four possible ways, three of which were directly related to the COVID-19 health emergency and one of which was to make necessary investments in water, sewer, or broadband infrastructure.

¶27.    Because these funds were never earmarked by either the federal or state government for any educational purposes, Parent for Public Schools (PPS) cannot claim harm.

**KING, PRESIDING JUSTICE, DISSENTING:**

¶28.    Parents for Public Schools (PPS) challenges the constitutionality of Senate Bills 2780 and 3064, which appropriate funds to schools that are not free schools in blatant violation of article 8, section 208, of the Mississippi Constitution, which forbids funds to be appropriated

13

to schools that are not free. PPS, representing parents of public school children, demonstrates a sufficient adverse effect from these bills to confer standing. The chancery court correctly held both that PPS has standing, analyzing the adverse effect in thorough detail, and that the bills are unconstitutional; we should therefore affirm the chancery court's judgment. Consequently, I respectfully dissent.

### 1. Standing

¶29. Mississippi's standing requirements are "quite liberal." *Araujo v. Bryant*, 283 So. 3d 73, 77 (Miss. 2019) (quoting *Davis v. City of Jackson*, 240 So. 3d 381, 384 (Miss. 2018)). Additionally, courts are permissive with granting standing when parties challenge government action. *Id.* This is true because if citizens do not have the authority to challenge the constitutionality of government action, "how else may constitutional conflicts be raised[?]" *Van Slyke v. Bd. of Trs. of State Insts. of Higher Learning*, 613 So. 2d 872, 875 (Miss. 1993) (quoting *Bd. of Trs. of State Insts. of Higher Learning v. Van Slyke*, 510 So. 2d 490, 495 (Miss. 1987) (Prather, J., dissenting)).

¶30. Plaintiffs have standing to sue if they "experience an adverse effect from the conduct of the defendant[.]" *Araujo*, 283 So. 3d at 77 (quoting *Davis*, 240 So. 3d at 384). The adverse effect must be different than that experienced by the general public. *Id.* In addition to standing based on adverse effect, taxpayer standing generally allows private citizens to challenge allegedly unlawful government actions when the actions would otherwise go unchallenged, even if no injury is claimed by the private citizen. *Green v. Cleary Water, Sewer & Fire Dist.*, 17 So. 3d 559, 569 (Miss. 2009).

14

¶31. PPS alleges that it has standing due to an adverse effect its members experience because the bills give a competitive advantage to private schools over public schools,[3] as well as due to taxpayer standing. The chancery court declined to address taxpayer standing because it found that PPS had standing under traditional notions of standing, holding that PPS experienced an adverse effect from the bills. The chancery court noted the funding and infrastructure challenges experienced by Mississippi public schools, pointing out several specific infrastructure challenges experienced by public schools, as well as noting that the Mississippi Adequate Education Program has only been fully funded twice in twenty years. The chancery court further cited authority regarding the common sense notion that private schools compete with public schools. *See Mueller v. Allen*, 463 U.S. 388, 395, 103 S. Ct. 3062, 77 L. Ed. 2d 721 (1983). It is also common sense that good infrastructure can

---

[3]The concurring opinion inexplicably concludes that plaintiffs cannot have been harmed by the legislated competitive advantage given to nonfree schools because the source of the funds is federal. How a competitive advantage magically disappears as an injury due to the source of the funding, the separate opinion declines to explain. Further, to argue that the funding is not educational funding after the Legislature specifically allocates it to education (albeit nonfree schools) is disingenuous. Once the funding is within the Legislature's control and is legislated to someone, whether an injury occurs due to said legislation will rarely have a significant connection to the source of the funds.

According to the concurring opinion, the Legislature could have made any number of unconstitutional distinctions to legislate competitive advantage, and no one would have standing under Mississippi law to challenge them because the funds are American Rescue Plan Act (ARPA) funds. And according to the majority, no one has standing under Mississippi law to challenge any competitive advantage because it is not a concrete injury. For example, had the Legislature specified that some of the funds would go to restaurants for infrastructure upgrades, but only to white-owned restaurants, the separate opinion stands for the notion that nonwhite restaurant owners do not have standing to challenge the competitive advantage legislated to white restaurant owners because they can have no standing as the funds are ARPA funds, while the majority deems such a legislation as a noninjury. This is, of course, an absurd result, but one that both opinions now mandate.

15

positively impact learning and lead to an advantage, while poor infrastructure can negatively impact learning and lead to a disadvantage. Texas Ass'n of Sch. Bds., *5 Ways Your School Facilities Impact Student Achievement* (updated Feb. 14, 2024), https://www.tasb.org/news-insights/school-facilities-impact-student-achievement. When a student chooses to attend private school over his or her zoned public school, the public school district loses the funds it would be given for that child; better infrastructure simply makes those private schools more attractive and more competitive. It is clear that public schools and the children who attend them experience an adverse effect from these bills that legislate a competitive advantage for schools that are not free.

¶32. The majority relies heavily on *City of Picayune v. Southern Regional Corp.* for the proposition that PPS does not have a sufficiently present adverse effect to confer standing. Maj. Op. ¶ 18. But *City of Picayune* is distinguishable in that, and distinguished itself based on the fact that, it did not involve a governmental action. *City of Picayune v. S. Reg'l Corp.*, 916 So. 2d 510, 525-26 (Miss. 2005). The Court relied on statutory law regarding suing a nonprofit corporation to determine whether the intervenors in the case had standing to sue. *Id.* at 525-28. Further, the majority's holding that speculative future harm is insufficient to confer standing wipes out decades of standing law in which parties challenge government action whose tangible impacts are purely prospective. Threatened injury is sufficient to confer standing. *Miss. Manufactured Hous. Ass'n v. Bd. of Aldermen of City of Canton*, 870 So. 2d 1189, 1193-94 (Miss. 2004). In *Mississippi Manufactured Housing Ass'n*, this Court found that a speculative future injury was sufficient to confer standing to challenge a

16

zoning decision that would restrict the locations for manufactured housing because the "decision will no doubt have a direct negative economic impact on any member of MMHA that sells manufactured homes in the City because their buyer's market would be diminished."[4] *Id.* at 1194. No injury or loss of sale had yet occurred; the City had merely legislated a competitive disadvantage for manufactured homes, just as the State has here legislated a competitive disadvantage for public schools. *Id.*

¶33. Further examples of speculative future harm conferring standing exist in cases in which citizens challenge zoning or other decisions on the basis that a future development will have a solely future and speculative adverse impact on their property; indeed, adverse effects such as aesthetic changes or property value decrease are not only purely future speculation, but may not come to fruition—some changes to zoning may increase property value and beautify aesthetics, yet allegations of the opposite are sufficient alleged adverse effects to confer standing. *See, e.g.*, ***Hall v. City of Ridgeland***, 37 So. 3d 25 (Miss. 2010) (landowners alleged future adverse impact on their property due to aesthetic impediments and encroachment on privacy, as well as that the development would depreciate their property values); *see also* ***Butler v. Watson (In re Initiative Measure 65)***, 338 So. 3d 599, 606 (Miss. 2021) (city experienced adverse effect because it argued that "it 'is *likely* to experience an adverse effect[']" because its zoning authority would be impacted (emphasis added)); ***Beard v. City of Ridgeland***, 245 So. 3d 380, 393 (Miss. 2018) (property owners near an approved

---

[4]Interestingly, the majority focuses on the Colorado case cited by this Court, which is not precedential, rather than this Court's decision that is precedential. A sale had been lost in the Colorado case, but the Mississippi case based its decision on a purely speculative future injury and undermines the majority's arguments.

new commercial development had standing to challenge allowing the development because they alleged sufficient adverse effect by alleging traffic would increase and the development would "change the aesthetics of the area"); *Ball v. Mayor & Bd. of Aldermen of City of Natchez*, 983 So. 2d 295 (Miss. 2008) (nearby landowners had standing to challenge land sale because they alleged that a condominium development would aversely impact their properties). In such cases, it would be impossible to allege any completed adverse impact until the development was actually completed, which would obliterate the right to challenge government action before it caused completed injury. Moreover, as the chancellor correctly pointed out in her thorough ruling, adverse effect does not need to be quantifiable. *See State ex rel. Moore v. Molpus*, 578 So. 2d 624, 632 (Miss. 1991); *Dye v. State ex rel. Hale*, 507 So. 2d 332, 338 (Miss. 1987).

¶34. This case begs the question: if parents of public school children are not sufficiently adversely impacted to challenge this government action, who is?[5] The State averred at oral argument that perhaps no one has standing to challenge the constitutionality of these bills

---

[5]As the chancellor pointed out, if we accept that PPS is not adversely impacted by the bills, this case fits perfectly into a case appropriate for taxpayer standing because no one would otherwise be able to challenge these bills. The majority misrepresents the scope of our inquiry when it broadly imagines, without providing examples, that there may exist people with standing to challenge the distribution of ARPA funds. We are not analyzing the broader distribution of ARPA funds, but are narrowly analyzing whether the Independent Schools Infrastructure Grant Program Act of 2022 causes an adverse impact based on an alleged violation of section 208, which applies only to schools. PPS consequently alleges a specific harm via a violation of section 208, in that the legislated advantage for nonfree schools will deprive public schools of their students and, consequently, their funding. The classes of plaintiffs who could credibly allege this injury would only include those directly related to public schools, not parties eligible to receive ARPA funds, as it is difficult to imagine any of them experiencing an adverse effect from a specific violation of section 208.

under section 208. It asserted that the government may act as flagrantly unconstitutionally as it likes so long as no one can provide a very direct link to harm and that "it shouldn't bother anyone." We have preserved liberal standing requirements when challenging governmental actions, because " how else may constitutional conflicts be raised[?]" *Van Slyke*, 613 So. 2d at 875 (quoting *Van Slyke*, 510 So. 2d at 495). The majority holds now that threatened harm, which by its nature is always in the future and speculative, is insufficient to confer standing. Its holding allows for situations in which the government could act blatantly unconstitutionally and never be reined in because no one would have sufficient standing to challenge the action. But if our constitution is violated, that constitutes harm in and of itself, and our liberal standing jurisprudence has long provided citizens with a check and balance on their government, allowing them to challenge government actions that potentially violate the law. The majority's holding today flies in the face of our longstanding liberal standing jurisprudence and severely limits the ability of Mississippi citizens to challenge government actions that violate the constitution.

### 2. *Constitutionality*

¶35. Because I believe that PPS has standing to challenge Senate Bills 2780 and 3064, I will address the constitutionality of these bills.

> When faced with a question regarding interpretation of our Constitution, the Court begins by examining the plain text of our Constitution. The Court "must enforce the articles of the Constitution as written." *Pro-Choice Miss. v. Fordice*, 716 So. 2d 645, 652 (Miss. 1998). We enforce the "plain language" of the Constitution. *Thompson v. Att'y Gen. of Miss.*, 227 So. 3d 1037, 1041 (¶ 11) (Miss. 2017) (internal quotation mark omitted) (quoting *Johnson v. Sysco Food Servs.*, 86 So. 3d 242, 244 (¶ 3) (Miss. 2012)).

When a court is entreated to interpret the terms of a constitution, a court ought to "bow with respectful submission to its provisions[,]" *Cohens v. Virginia*, 19 U.S. 264, 377, 6 Wheat. 264, 5 L. Ed. 257 (1821), not "take liberties" with its text, *National Mutual Insurance Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 647, 69 S. Ct. 1173, 93 L. Ed. 1556 (1949) (Frankfurter, J., dissenting). Our Constitution's plain language is to be given its "usual and popular signification and meaning[.]" *Town of Sumner v. Ill. Cent. R.R. Co.*, 236 Miss. 342, 111 So. 2d 230, 233 (1959) (quoting *State v. Mobile, J. & K.C.R. Co.*, 86 Miss. 172, 38 So. 732, 735 (1905)). If that meaning lacks ambiguity, then there is "no reason for legislative or judicial construction." *Dunn v. Yager*, 58 So. 3d 1171, 1189 (¶ 46) (Miss. 2011) (internal quotation mark omitted) (quoting *Ex parte Dennis*, 334 So. 2d 369, 373 (Miss. 1976)).

*In re Initiative Measure No. 65*, 338 So. 3d at 607.

¶36. Article 8, section 208, of the Mississippi Constitution states that

[n]o religious or other sect or sects shall ever control any part of the school or other educational funds of this state; nor shall any funds be appropriated toward the support of any sectarian school, or to any school that at the time of receiving such appropriation is not conducted as a free school.

Miss. Const. art. 8, § 208.

¶37. Senate Bill 2780 states that it is "[a]n Act . . . to create the 'Independent Schools Infrastructure Grant Program Act of 2022' to be administered by the Department of Finance and Administration with funds appropriated from the Coronavirus State Fiscal Recovery Fund[.]" S.B. 2780, Reg. Sess., 2022 Miss. Laws ch. 482. In creating the grant program, the Legislature mandated that "[t]he program shall be funded from appropriations by the Legislature to the department from the Coronavirus State Fiscal Recovery Fund." *Id.* § 12(2). Funds are to be applied to certain infrastructure projects completed by certain schools that are not free schools. *Id.* § 12. Senate Bill 3064 is entitled "[a]n Act . . . to make an appropriation from the Coronavirus State Fiscal Recovery Fund to the Department of Finance

20

and Administration for the purpose of administering the 'Independent Schools Infrastructure Grant Program[.]'" S.B. 3064, Reg. Sess., 2022 Miss. Laws ch. 66. It then provides that

> [t]he following sum, or so much of it as may be necessary, is appropriated out of any money in the Coronavirus State Fiscal Recovery Fund not otherwise appropriated, to the Department of Finance and Administration for the purpose of funding the Independent Schools Infrastructure Grant Program established in Senate Bill No. 2780, 2022 Regular Session, for the fiscal year beginning on July 1, 2022, and ending June 30, 2023[:] $10,000,000.00.

*Id.* § 2. By the plain language of the terms of the two bills, the Legislature appropriated funds toward the support of schools that are not free schools. By the plain language of section 208 of the Mississippi Constitution, the Legislature shall not appropriate "any funds" to schools that are not free schools. The unconstitutionality of the two bills is plain and obvious: Senate Bills 2780 and 3064 clearly violate section 208 of the Mississippi Constitution by appropriating funds to independent schools that are not free.

¶38. Because PPS has standing, and because Senate Bills 2780 and 3064 are obviously unconstitutional, I dissent from the majority's finding that PPS does not have standing to challenge these bills because it experiences no adverse effect. I would affirm the ruling of the chancery court.

**KITCHENS, P.J., JOINS THIS OPINION.**

21